Filed 8/30/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| In re C.B., a Person Coming Under the Juvenile Court Law. | ) ) ) | |
| _____ | ) | |
| | ) | |
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S237801 |
| v. | ) | |
| | ) | Ct.App. 1/3 A146277 |
| C.B., | ) | |
| | ) | Contra Costa County |
| Defendant and Appellant. | ) | Super. Ct. No. J1301073 |
| _____ | ) | |
| | ) | |
| In re C.H., a Person Coming Under the Juvenile Court Law. | ) ) | |
| _____ | ) | |
| | ) | |
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S237762 |
| v. | ) | |
| | ) | Ct.App. 1/3 A146120 |
| C.H., | ) | |
| | ) | Contra Costa County |
| Defendant and Appellant. | ) | Super. Ct. No. J1100679 |
| _____ | ) | |

The California Department of Justice maintains a databank of DNA

samples and genetic profiles collected from certain adult and juvenile offenders

SEE CONCURRING OPINION

who have been arrested, convicted, or declared wards of the court. (Pen. Code, §§ 295–300.4.)[1] Juveniles declared wards based on felony conduct must submit samples, but need not do so for most misdemeanor offenses. (§ 296, subd. (a).) The Legislature has also established a procedure to seek destruction of a sample and expungement of a profile from the databank. (§ 299.)

In 2014, the passage of Proposition 47 reclassified various drug and property offenses from felonies to misdemeanors. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, §§ 5–13, pp. 71–73 (Proposition 47 Voter Guide).) Appellants here are juveniles who were declared wards of the court based on conduct that was felonious when committed. They urge that because their acts are now misdemeanors, they are entitled to have their DNA samples and profiles removed from the databank. We hold that Proposition 47 does not authorize that relief, nor does equal protection compel it. The judgments of the Courts of Appeal are affirmed.

## I. BACKGROUND

These two cases raise the identical legal issues and were consolidated for argument and decision.

In 2011, C.H. entered a department store with two friends, changed into a pair of pants in a dressing room, and left the store alone without paying for the new pants. He saw his friends fighting with a loss prevention officer and joined in, kicking the officer in the head. C.H. was arrested and admitted both theft and assault.

A juvenile wardship petition was sustained, with findings that C.H. committed felony grand theft person. (Welf. & Inst. Code, former § 602,

---

[1]    All further unlabeled statutory references are to the Penal Code.

2

subd. (a); Pen. Code, § 487, subd. (c).) He was ordered to submit fingerprints and DNA samples to the California Department of Justice. (Pen. Code, §§ 296, 296.1.)

In 2013, C.B. entered an unoccupied home and took jewelry, a wallet, cell phone, and video game system. When the homeowner unexpectedly returned, C.B. brandished a knife to attempt escape. The victim and witnesses detained C.B., who confessed when police officers arrived.

The court sustained a wardship petition based on misdemeanor residential burglary and felony grand theft person. (Welf. & Inst. Code, former § 602, subd. (a); Pen. Code, §§ 459, 460, subd. (b), 487, subd. (c).) C.B. was also ordered to submit fingerprints and DNA samples. (Pen. Code, §§ 296, 296.1.)

In 2015, after voters approved Proposition 47, C.B. and C.H. petitioned to have their felony violations redesignated as misdemeanors, their fines reduced, and their DNA samples and profiles expunged from the state databank. (See §§ 299, 490.2, 1170.18.) In each case, the trial courts redesignated the offense as a misdemeanor and reduced the fine. However, both motions for expungement were denied.

Two different panels of the Court of Appeal affirmed, one by a divided vote. (*In re C.B.* (2016) 2 Cal.App.5th 1112; *id.* at p. 1128 (dis. opn. of Pollak, Acting P. J.); *In re C.H.* (2016) 2 Cal.App.5th 1139.) In *In re C.B.*, the majority concluded Proposition 47 did not expand the existing grounds for expungement. Moreover, after Proposition 47's passage the Legislature had amended section 299, subdivision (f), to clarify that redesignation of a felony to a misdemeanor was not a basis for removal. (*In re C.B.*, at pp. 1118–1128.) The dissent argued that Proposition 47 required redesignated offenses to be treated as misdemeanors for *all* purposes, including eligibility for retention in the databank. (See § 1170.18,

3

subd. (k).) The dissent urged that the Legislature's amendment of section 299, subdivision (f), was invalid because it contravened Proposition 47.

In re C.H. was issued the same day. There, a unanimous court interpreted the statutory scheme similarly to the *In re C.B.* majority. It held that Proposition 47 did not change the circumstance that C.H.'s conduct had been a felony when committed and his sample had been properly collected. Nothing in section 299 or section 1170.18 authorized expungement based on subsequent redesignation of C.H.'s offense. (*In re C.H.*, *supra*, 2 Cal.App.5th at pp. 1145–1151.) The court expressly disagreed with *Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209, 1226–1230, which had held to the contrary. *In re C.H.* also rejected the argument that equal protection principles required expungement. (*In re C.H.*, at pp. 1151–1152.)

## II. DISCUSSION

### A. *Legal Background*

#### 1. *The State DNA Databank*

For several decades, "California law [has] required the collection of biological samples from individuals convicted of certain offenses. In 1983, the Legislature enacted legislation requiring certain sex offenders to provide blood and saliva samples before their release or discharge. (Stats. 1983, ch. 700, § 1, pp. 2680–2681, codified at Pen. Code, former § 290.2.) In 1998, the Legislature enacted the 'DNA and Forensic Identification Data Base and Data Bank Act of 1998,' which required the collection of DNA samples from persons convicted of certain felony offenses, including certain sex offenses, homicide offenses, kidnapping, and felony assault or battery. (Stats. 1998, ch. 696, § 2, pp. 4571–4579; Pen. Code, former § 296, subd. (a).)" (*People v. Buza* (2018) 4 Cal.5th 658, 665.) In 2004, the voters adopted Proposition 69, which amended the act to further expand the class of those obligated to submit samples. This expanded

4

group included all juveniles adjudged wards of the court based on felony conduct. (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) text of Prop. 69, § III.3, pp. 137-138 (Proposition 69 Voter Guide).)

The DNA and Forensic Identification Database and Data Bank Act of 1998 (DNA Act) requires submission of "buccal swab samples, right thumbprints, and a full palm print impression of each hand, and any blood specimens or other biological samples required pursuant to this chapter for law enforcement identification analysis." (§ 296, subd. (a).) The buccal swab samples contain the offender's DNA. (See § 295, subd. (e).) Samples are submitted to the California Department of Justice's DNA Laboratory, which creates and stores a genetic profile in the databank. (§§ 295, 295.1; see *People v. Buza*, *supra*, 4 Cal.5th at p. 666.)[2]

### 2. *Proposition 47*

In 2014, Proposition 47 reclassified as misdemeanors various drug- and theft-related offenses previously treated as felonies or wobblers. (*People v. Valencia* (2017) 3 Cal.5th 347, 355.) The initiative had both prospective and retroactive aspects, reducing punishments going forward and providing relief for those who had already suffered felony convictions. To achieve its retroactive purposes, the initiative added section 1170.18, which authorized a petition for recall of sentence or reclassification of an offense. Felons currently serving a sentence based on conduct now reclassified as a misdemeanor could petition for recall of their sentences and imposition of a sentence consistent with their new misdemeanor status. (§ 1170.18, subds. (a)–(b); *People v. Page* (2017) 3 Cal.5th

---

[2] Hereafter, we use "sample" as a shorthand for the full range of biological samples and profile information submitted and stored under the DNA Act, as amended by Proposition 69.

5

1175, 1179.) Those who had already completed a felony sentence could apply to have the felony redesignated as a misdemeanor. (§ 1170.18, subds. (f)–(h).) Notably, the initiative gives redesignation broad effect: "A felony conviction that is recalled and resentenced under subdivision (b) or designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes . . . ." (§ 1170.18, subd. (k).)[3]

Nothing in the text of section 1170.18 explicitly applies to juveniles. The various provisions for resentencing or redesignation speak entirely in terms of sentences and convictions, as opposed to juvenile adjudications. (See, e.g., § 1170.18, subds. (a), (b), (f), (k).) "A juvenile adjudication is not a conviction." (*People v. Robinson* (2010) 47 Cal.4th 1104, 1117, fn. 14; see Welf. & Inst. Code, § 203.) However, *Alejandro N. v. Superior Court*, *supra*, 238 Cal.App.4th at pp. 1224–1226, concluded section 1170.18 applies equally to juveniles. The People do not contest the application to juvenile cases, and we accept the People's concession.

B.    *The Scope of the Statutory Entitlement to Expungement from the State Databank*

C.B. and C.H. argue Proposition 47's "misdemeanor for all purposes" requirement (§ 1170.18, subd. (k)) entitles them to exclusion from the DNA databank. That contention hinges on the construction of two different voter enactments, Proposition 69, which expanded the databank, and Proposition 47, which reclassified various offenses. We apply the same interpretive principles to initiatives as to legislative enactments, beginning with the text as the best guide to

---

[3]    The only exception to this "for all purposes" provision is that a grant of relief "shall not permit that person to own, possess, or have in his or her custody or control a firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6." (§ 1170.18, subd. (k).)

6

voter intent and turning to extrinsic sources such as ballot materials when necessary to resolve ambiguities. (*People v. Park* (2013) 56 Cal.4th 782, 796–798; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 321.) Where possible, we seek to harmonize the measures, giving full effect to each. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043.)

   1. *Text*

  The DNA Act, as modified by Proposition 69, identifies those who must provide samples for the databank. Since 2004, that group has included "any juvenile who is adjudicated under Section 602 of the Welfare and Institutions Code for committing any felony offense." (§ 296, subd. (a)(1).) C.B. and C.H. became obligated to submit samples when they were found to have committed felonies. C.B. and C.H. would not be under a similar obligation today because Proposition 47 reclassified various crimes, including theirs, from felonies to misdemeanors. (See § 490.2, added by Prop. 47, § 8.)

  With respect to sample *submission*, Propositions 69 and 47 interact harmoniously. Proposition 69 identifies, in the abstract, juveniles who must submit samples, principally those adjudicated wards for having committed felonies. Proposition 47 operates prospectively to narrow the class of juveniles who must submit samples because it redefines what offenses are felonies. While Proposition 47 spares some future offenders a duty to submit samples, it does not alter the past reality that C.B. and C.H. were adjudicated to have committed felonies and were obligated at the time to provide samples based on those adjudications.

  Section 299 governs *retention* of samples after they have been submitted. Section 299, subdivision (a), says: "A person whose DNA profile has been included in the databank pursuant to this chapter shall have his or her DNA specimen and sample destroyed and searchable database profile expunged from

7

the databank program pursuant to the procedures set forth in subdivision (b) if the person has no past or present offense or pending charge which qualifies that person for inclusion within the state's DNA and Forensic Identification Database and Databank Program and there otherwise is no legal basis for retaining the specimen or sample or searchable profile." As enacted, subdivision (a) sets out three conditions for expungement: (1) "no past or present offense or pending charge which qualifies that person for inclusion," (2) no alternate legal basis for retention, and (3) compliance with "the procedures set forth in subdivision (b)."

After Proposition 47, C.B. and C.H. now appear to satisfy the first and second conditions. Their felony findings have been reclassified and their offenses redesignated as misdemeanors. Under section 296, a juvenile adjudication based on a misdemeanor petty theft violation (§ 490.2) does not trigger an obligation to submit a sample for inclusion. Section 299, subdivision (a), is written in the present tense; C.B. and C.H. do not currently have any "past or present offense . . . which qualifies [them] for inclusion." Further, the People present no other legal basis for retaining their samples. As for the third condition, petitioners did make written requests for destruction and expungement under section 299, subdivision (b), but they do not satisfy the further requirements set out in that provision.

To explain the nature of their failure, we trace the history of section 299, subdivision (b)'s procedures. Since the databank's inception, submission and removal of samples have been governed by different standards. In 1983, the state began collecting blood and saliva samples from mentally disordered sex offenders but provided no mechanism for removal or expungement. (Former § 290.2, enacted by Stats. 1983, ch. 700, § 1, pp. 2680–2681.) By 1996, the categories of offenders required to submit samples had expanded to include those convicted of certain violent felonies. (Former § 290.2, subdivision (a), as amended by Stats.

8

1996, ch. 917, § 2, p. 5217.)  Biological evidence from known or unknown suspects could also be included in the databank, but had to be stricken if an individual was later excluded as a suspect.  (*Id.*, subd. (f)(3).)  The law still contained no provision for removing samples submitted by those convicted of crimes.

In 1998, the DNA Act comprehensively revised the statutory scheme for both collection and retention of samples, repealing former section 290.2 and adding a new chapter to the Penal Code.  (Stats. 1998, ch. 696, pp. 4571–4587; see *People v. Brewer* (2001) 87 Cal.App.4th 1298, 1301–1303.)  The universe of those required to submit samples again expanded.  (Former § 296, enacted by Stats. 1998, ch. 696, § 2, pp. 4574–4575.)  For the first time, the revised statutory scheme provided standards for removal of samples taken from those who had previously been charged with or convicted of a crime.  (Former § 299, enacted by Stats. 1998, ch. 696, § 2, pp. 4582–4583).  In cases of reversal, acquittal, or a finding of factual innocence, the court entering the judgment was directed to order expungement.  (*Id.*, subd. (a).)  In the alternative, an affected individual could request expungement.  (*Id.*, subd. (b)(1).)[4]

In 2004, Proposition 69 reorganized the expungement provisions and amended the procedures for obtaining removal, which was still available only in limited circumstances.  (Prop. 69 Voter Guide, *supra*, text of Prop. 69, § III.9, pp. 141–142.)  The court's independent duty to order expungement was eliminated.  (*Ibid.*; see former § 299, subd. (a), as enacted by Stats. 1998, ch. 696, § 2, p. 4582.)  The Department of Justice was no longer required to periodically

---

**4**     Former section 299, subdivision (d), also continued the provision for removing samples from individuals determined to no longer be suspects.  (Former § 299, subd. (d), enacted by Stats. 1998, ch. 696, § 2, p. 4583.)

9

review and purge samples from former suspects. (Prop. 69 Voter Guide, *supra*, text of Prop. 69, § III.9, pp. 141–142; see former § 299, subd. (d), as enacted by Stats. 2000, ch. 823, § 5, pp. 5680–5681.) An additional basis for expungement was added, however. Because Proposition 69 for the first time extended the duty to submit samples to specified *arrestees*, it also allowed individuals to seek expungement if charges were not filed or were subsequently dismissed. (§ 299, subd. (b)(1).) Even with this addition, the grounds for exclusion from the databank remain narrower than the grounds for inclusion in the first instance.[5]

In an important particular, the current scheme operates as it has since the databank's inception: a showing of changed circumstances eliminating a duty to *submit* a sample is an insufficient basis for *expungement* of a sample already submitted. As *Coffey v. Superior Court* (2005) 129 Cal.App.4th 809, 823, explained, the DNA Act does not "permit expungement of the DNA profile (or destruction of the samples or specimens) merely because [a] charge was subsequently reduced to a misdemeanor: the [Act] permits expungement only on limited grounds." A petitioner must demonstrate one of four specific conditions: (1) charges were either not filed or were dismissed, (2) charges resulted in an acquittal, (3) any conviction was reversed and the case dismissed, or (4) the

---

[5]    The provisions of the DNA Act dealing with offenses subject to sex offender and arsonist registration reflect another area where the duty to submit a sample and the right to expungement are not coextensive. Section 296, subdivision (a)(3), requires both felony and misdemeanor offenders to register as sex offenders or arsonists to submit a sample. While the presence of a duty to register requires the submission of a sample, the expiration of that duty does not give rise to a corresponding right to expungement: "Notwithstanding any other law, the Department of Justice DNA Laboratory is not required to expunge DNA profile or forensic identification information or destroy or return specimens, samples, or print impressions taken pursuant to this section if the duty to register [as a sex offender or arsonist] is terminated." (§ 299, subd. (e).)

petitioner was found factually innocent. (§ 299, subd. (b)(1)–(4).) The applicant must request expungement in writing, with copies to the DNA Laboratory of the Department of Justice, the trial court, and the prosecuting attorney. (§ 299, subds. (b), (c)(1).) Thereafter, the applicant must make "the necessary showing at a noticed hearing." (*Id.*, subd. (c)(2).) The court has discretion to determine whether that showing is sufficient. (*Id.*, subd. (c)(1).) The Department of Justice is obligated to expunge a sample only after receiving a court order directing that action, along with documentary proof that one of the four conditions for expungement has been satisfied. (*Id.*, subd. (c)(2)(B), (D).) *Coffey* was decided before Proposition 47 was passed. The question here is whether *Coffey* remains good law. We conclude that it does.

After the court's redesignation orders, C.B. and C.H. no longer stand adjudicated of felonies. But they cannot meet the additional expungement requirements of subdivision (b): lack of charges, acquittal, appellate reversal, or a finding of factual innocence. On the face of the statute, eligibility for expungement is confined to these circumstances. Nothing in section 299 authorizes expungement on the ground that conduct previously deemed a felony is now punished only as a misdemeanor.[6]

This reading of the DNA Act, as amended by Proposition 69, does not conflict with the text of Proposition 47, which provides that felonies redesignated as misdemeanors must be treated as such for "all purposes." (§ 1170.18,

---

[6] C.B. and C.H. argue that the basis for expungement they would have us add to the statute is analogous to the existing bases for expungement in cases of acquittal or reversal on appeal. But reduction of a crime from a felony to a misdemeanor differs from the statutorily recognized bases in a crucial respect: it lacks a determination that the defendant has not been proven to have *any* criminal culpability.

11

subd. (k).)  Section 296's imposition of a duty to *submit* a sample hinges on the classification of the offense at the time of adjudication.  A later reclassification to a misdemeanor leaves that former duty undisturbed.  Section 299 hinges eligibility for *expungement* not only on the present status of any offense, but also on a range of other conditions, none of which are satisfied by the reclassification of the offense.  The Legislature or drafters of Proposition 69 could have subjected submission and retention of samples to the same standards, so that someone no longer obligated to submit a sample would be entitled to expungement.  Alternatively, the drafters of Proposition 47 could have provided that reclassification was now a basis for expungement.  Such a provision would have addressed the established rule from *Coffey v. Superior Court*, *supra*, 129 Cal.App.4th 809, that later reduction of a felony to a misdemeanor does not support expungement.  Neither alternative was pursued.

C.B. and C.H. offer three interrelated textual arguments.  First, they stress that section 1170.18, subdivision (k), contains only one exception to its "misdemeanor for all purposes" rule, the continued limitation on gun possession.  The voters should be presumed to know of the state's DNA collection, and did not add an additional exception for DNA samples.  (*Alejandro N. v. Superior Court*, *supra*, 238 Cal.App.4th at pp. 1227–1228; *In re C.B.*, *supra*, 2 Cal.App.5th at p. 1130 (dis. opn. of Pollak, Acting P. J.).)  The difficulty with this argument is that no exception is needed to conclude that expungement is not a consequence of redesignation.  After Proposition 47, redesignation of a category of offenses can terminate the duty to *submit* samples.  But redesignation is largely immaterial to *expungement*, which does not hinge on whether an offense would give rise to a duty to submit were it committed today.  There is no inconsistency between treating a redesignated offense as a misdemeanor for all purposes and declining to expunge a previously submitted DNA sample.

12

C.B. and C.H. next contend redesignation of their offenses qualifies them for expungement because they have no past or present offense that would "qualif[y them] for inclusion" in the databank. (§ 299, subd. (a); *Alejandro N. v. Superior Court*, *supra*, 238 Cal.App.4th at p. 1229 [redesignated offenses are "disqualified for DNA sample retention"].) This argument ignores the fact that section 299, subdivision (a), does not operate in isolation: by its terms, section 299 also requires satisfaction of at least one of the additional conditions in subdivision (b).

Finally, C.B. and C.H. argue that section 299, subdivision (b)'s express list of conditions should not be deemed exhaustive. They rely on *Alejandro N. v. Superior Court*, *supra*, 238 Cal.App.4th at pages 1228–1229, which so held. They also cite *Coffey v. Superior Court*, *supra*, 129 Cal.App.4th at pages 816–817, which considered a constitutional challenge to the retention of a DNA sample, even though that petitioner had not sought to satisfy the statutory section 299 conditions for expungement. (See also *In re C.B.*, *supra*, 2 Cal.App.5th at pp. 1130–1131, 1137 (dis. opn. of Pollak, Acting P. J.).) *Coffey* stands for an unexceptional principle: the state or federal Constitution may impose limits on the operation of a statutory scheme above and beyond those contained in the scheme itself. *Coffey* offers no authority for what C.B. and C.H. seek here, judicial amendment of a statute based on purely statutory considerations. *Alejandro N. v. Superior Court*, *supra*, 238 Cal.App.4th 1209, to the extent it held the language of Proposition 47 could justify inserting an additional unwritten basis for expungement into section 299, subdivision (b), was mistaken, and is disapproved.

In sum, the text of Proposition 47 and the DNA Act as amended by Proposition 69 can be harmonized. Proposition 47 narrows the universe of those who must submit samples in the future under section 296. It does not, however, expand the universe of those who may seek expungement of samples already submitted.

13

2. *Ballot Arguments and Other Indicia of Purpose*

This interpretation of the statutory scheme advances the ballot arguments put forward in support of Proposition 69 and is consistent with those articulated in support of Proposition 47.

Proponents of Proposition 69 offered two principal reasons for expanding the state's existing DNA databank to include samples from all felons and some arrestees. First, the measure would allow law enforcement to solve additional cases.[7] Second, it could exclude individuals as potential suspects, thus preventing wrongful accusation.[8] Highlighting these twin purposes, the initiative was titled the "DNA Fingerprint, Unsolved Crime and Innocence Protection Act." (Prop. 69 Voter Guide, *supra,* text of Prop. 69, § I.(a), p. 135.) The initiative's codified and uncodified statements of purpose likewise stressed apprehension and exoneration in equal measure.[9]

Interpreting the amended DNA Act by its terms, to require more stringent conditions for expungement than for initial inclusion, supports these purposes.

---

**7** See Proposition 69 Voter Guide, *supra*, argument in favor of Proposition 69, page 62 ("DNA IDENTIFIES CRIMINALS"; the measure "helps solve crime"; "Currently, California's DNA database is too small," allowing more crimes to go unsolved).

**8** See Proposition 69 Voter Guide, *supra*, argument in favor of Proposition 69, page 62 (the measure will "help[] . . . free those wrongfully accused"; "DNA evidence is one of the most effective ways to prove someone was not involved with a crime. 69's complete DNA database helps ensure people are not wrongfully accused.").

**9** See Penal Code section 295, subdivision (c) (the purpose of the state's databank is to assist law enforcement "in the expeditious and accurate detection and prosecution of individuals responsible for sex offenses and other crimes [and] the exclusion of suspects who are being investigated for these crimes"); Proposition 69 Voter Guide, *supra*, text of Proposition 69, section II.(a)–(g), page 135; *Good v. Superior Court* (2008) 158 Cal.App.4th 1494, 1508–1509.

The broader the databank's reach, consistent with voter intent and constitutional limits, the more likely a sample will be available to inculpate, or exculpate, a suspect in a given case.

As for Proposition 47, proponents emphasized the goal of reducing costs and reallocating both prosecutorial and prison resources. Reclassifying various felonies as misdemeanors, proponents urged, would "focus[] law enforcement dollars on violent and serious crime" and "[s]top[] wasting money on warehousing people in prisons for nonviolent petty crimes, saving hundreds of millions of taxpayer funds every year." (Prop. 47 Voter Guide, *supra*, argument in favor of Prop. 47, p. 38; see *id.*, rebuttal to argument against Prop. 47, p. 39.) The measure's uncodified findings and statement of purpose likewise emphasized "ensur[ing] that prison spending is focused on violent and serious offenses" (*id.*, text of Prop. 47, § 2, p. 70) and "sav[ing] significant state corrections dollars" that could better be spent elsewhere (*id.*, § 3(6), p. 70).

Absent from these materials is any indication Proposition 47 was intended to retroactively alter the state's existing DNA databank. Modifying the databank neither advances nor impedes Proposition 47's goals to reduce the prison population and reallocate resources. Even reframing Proposition 47's goal more generally as reducing the punishment for certain crimes does not suggest a different conclusion. Because requiring the submission of a sample is not punishment (*Good v. Superior Court*, *supra*, 158 Cal.App.4th at p. 1510; *People v. Travis* (2006) 139 Cal.App.4th 1271, 1295), it follows that retention of a sample is not punishment either.

C.B. and C.H. highlight cases that have construed Proposition 47 as broadly intending to extinguish all collateral consequences for redesignated offenses, other than limits on future gun possession. (See *People v. Evans* (2016) 6 Cal.App.5th 894, 900–901, review granted and held on other grounds for *People v. Valenzuela*,

15

review granted Mar. 1, 2017, S239122; *Alejandro N. v. Superior Court*, *supra*, 238 Cal.App.4th at p. 1228; *In re C.B.*, *supra*, 2 Cal.App.5th at p. 1130 (dis. opn. of Pollak, Acting P. J.).)  In their view, this intent supports expungement because their offenses have been redesignated.

The argument fails.  There is no evidence the voters intended to expand the grounds for expungement.  While many other sections of the Penal Code were amended (see *People v. Valencia*, *supra*, 3 Cal.5th at p. 355), the text of the expungement statute was left untouched.  Proposition 47 necessarily revised the operation of section 296's requirement that a sample be submitted after a felony conviction by changing what crimes constitute a felony.  But Proposition 47 did not modify section 299, subdivision (b), to insert a new fifth basis for expungement.

C.H. also highlights Proposition 47's direction that its provisions "shall be liberally construed to effectuate its purposes."  (Prop. 47 Voter Guide, *supra*, text of Prop. 47, § 18, p. 74; see *id.*, § 15, p. 74.)  The initiative's overt ends emphasize reallocating resources and saving money by reducing penalties for certain offenses.  The retention of already-submitted samples generates no additional costs and imposes no punishment.  Whether samples are retained or not is unrelated to the stated purposes of Proposition 47.  The principle of liberal construction does not advance C.H.'s cause.

C.B. and C.H. argue that the state's public safety interest in *collecting* samples under Proposition 69 does not extend to most misdemeanants, so expungement would not conflict with the initiative's purposes.  (See *In re C.B.*, *supra*, 2 Cal.App.5th at pp. 1137–1138 (dis. opn. of Pollak, Acting P. J.).)  Yet the state's interest in *retaining* samples is also as broad as Proposition 69 and section 299 indicate.  If one looks to section 296 to define the state's interest in collecting samples, one must look equally to section 299's limits on expungement to

16

determine the state's interest in retaining them. Expanding expungement beyond the explicit requirements of section 299 would be inconsistent with Proposition 69's purposes.

In a related argument, C.B. contends he has a privacy interest in his sample that exceeds the state's public safety interest. C.B. does not contest the compelling nature of the state's interest in properly prosecuting crimes and exonerating the innocent. (*People v. Robinson, supra,* 47 Cal.4th at p. 1121.) He does not claim that collection of samples under section 296 as it applied before passage of Proposition 47 violated his privacy rights. (See *People v. Travis, supra*, 139 Cal.App.4th at pp. 1281–1290.) Instead, his argument appears to be that passage of Proposition 47 indicates a reduced state interest in collecting certain samples. He reasons that his privacy interests should now outweigh any state interest in retention. Once again, there is no basis to disregard section 299 as an equally relevant measure of the state's interest in retaining samples. The passage of Proposition 47 did nothing to diminish that interest. If, as C.B. concedes, neither the collection of his sample nor its retention was a privacy violation before Proposition 47, approval of the initiative does not change that calculus.

C.B. discusses his privacy interests solely as a means of bolstering his claim that the statutory scheme should be read in a particular fashion. He disavows the assertion of any constitutional privacy claim. Accordingly, we express no views whatsoever on the merits of such a claim.

In short, no purpose underlying Proposition 47 or 69 requires expungement here. Proposition 69 expands the state's databank to advance the compelling interests in public safety and appropriate exoneration through more accurate identification of criminals. The retention of existing samples is consistent with that goal. Proposition 47 reduces punishments for certain crimes as a means of

17

refocusing prison and prosecutorial resources on other crimes judged more serious. Nothing in the retention of samples hinders those aims.[10]

C. *Equal Protection*

C.H. argues that reading the statutory scheme to allow retention of his sample in the databank deprives him of equal protection under the state and federal Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).)[11] He contends offenders who commit future acts reclassified as misdemeanors by Proposition 47 and those who committed the same acts before the initiative's passage must be treated the same with respect to inclusion of samples in the state's DNA databank.

" 'The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally.' " (*People v. Valencia*, *supra*, 3 Cal.5th at p. 376.) It does not require, however, that different things must be treated as though they are the same.

---

[10] The People also rely on section 299, subdivision (f), as amended by the Legislature in 2015. That provision limits a court's ability "to relieve a person of the separate administrative duty to provide specimens, samples, or print impressions required by this chapter if a person has been found guilty or was adjudicated a ward of the court by a trier of fact of a qualifying offense as defined in subdivision (a) of Section 296, or was found not guilty by reason of insanity or pleads no contest to a qualifying offense as defined in subdivision (a) of Section 296." (§ 299, subd. (f).) In 2015, the Legislature amended the provision to add section 1170.18 to the list of laws explicitly identified as not supplying a basis for court relief from the duty to submit a sample. (§ 299, subd. (f), as amended by Stats. 2015, ch. 487, § 4.) Given our determination that other portions of the statutory scheme preclude the relief petitioners seek, we need not address the import of this provision.

[11] C.H. does not differentiate between the state and federal Constitutions or suggest the analysis under either should differ. Accordingly, we address his state and federal claims together. (See, e.g., *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)

(*Briggs v. Brown* (2017) 3 Cal.5th 808, 842.) Drawing on these two principles, we have noted that a meritorious equal protection claim must demonstrate " ' "that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' " (*People v. Morales* (2016) 63 Cal.4th 399, 408.) "Similarly situated" in this context means that the compared groups are " 'similarly situated for purposes of the law challenged.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) C.H. contends those who committed offenses subject to Proposition 47 reclassification before the initiative and those who committed the same offenses after are sufficiently similarly situated to warrant application of equal protection principles. We assume, without deciding, that this is so.

C.H. presents no argument that a distinction between those who committed offenses before and after November 2014 implicates a suspect classification or fundamental right. Counsel acknowledged at oral argument that no such argument had been preserved. In the absence of any demonstration of a suspect classification or a distinction that impacts a fundamental right, the challenged disparity in treatment need only survive rational basis scrutiny. (*Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 881.) Any reasonably conceivable basis for the disparity that is rooted in a legitimate government purpose, whether or not expressly articulated by the voters, is sufficient. (See *People v. Turnage* (2012) 55 Cal.4th 62, 74–75.)

Here, the voters rationally could differentiate between those who have submitted samples and those who have not based on cost considerations. (See *People v. Chatman* (2018) 4 Cal.5th 277, 290 ["Preserving the government's financial integrity and resources is a legitimate state interest."].) They could conclude some crimes are no longer serious enough to justify the additional costs of obtaining samples. Yet they could also view the risk of recidivism from those

19

who committed similar crimes when they were felonies as not slight enough to justify the additional costs of expunging samples already obtained.  Such expenditures would diminish the savings derived from other portions of the initiative and the amounts available to pursue the initiative's ends.  (See Prop. 47 Voter Guide, *supra*, text of Prop. 47, § 4, p. 70 [creating the " 'Safe Neighborhoods and Schools Fund' "]; Gov. Code, § 7599.1, subd. (a) [size of the Fund dependent on a calculation of "the savings that accrued to the state from the implementation of" the initiative].)  C.H. bears the burden of negating every plausible ground for the contested difference in treatment.  (See *People v. Turnage*, *supra*, 55 Cal.4th at p. 75.)  Because he cannot, his constitutional challenge must fail.

### III.  DISPOSITION

We affirm the judgments of the Courts of Appeal.

**CORRIGAN, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**MURRAY, J.***

_____

\*     Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20

**CONCURRING OPINION BY LIU, J.**


Our holdings today — that C.B. and C.H. do not qualify for expungement under Penal Code section 299 (maj. opn., *ante*, at pp. 6–18) and that there is a rational basis for treating individuals who have already submitted DNA samples differently from those who have not (*id.* at pp. 18–20) — are limited to the claims presented in these cases. As noted, neither C.B. nor C.H. pressed any claim that the state's retention of his DNA samples implicates a constitutionally protected privacy interest. (*Id.* at pp. 17, 19; see Cal. Const., art. I, § 1; *People v. Buza* (2018) 4 Cal.5th 658, 689–690.) Such a claim may give rise to a cause of action under the California right to privacy (see *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35–40) or require a more stringent equal protection analysis (see *Serrano v. Priest* (1971) 5 Cal.3d 584, 597) in a future case.


**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re C.B. and In re C.H.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 2 Cal.App.5th 1112 and 2 Cal.App.5th 1139
**Rehearing Granted**

_____

**Opinion No.** S237801 & S237762
**Date Filed:** August 30, 2018

_____

**Court:** Superior
**County:** Contra Costa
**Judge:** Thomas M. Maddock

_____

**Counsel:**

Anne Mania, under appointment by the Supreme Court, for Defendant and Appellant C.B.

Patricia Noel Cooney, under appointment by the Supreme Court, for Defendant and Appellant C.H.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano, Aileen Bunney, Laurence K. Sullivan, Eric D. Share and Enid A. Camps, Deputy Attorneys General, for Plaintiff and Respondent in No. S237801.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Laurence K. Sullivan, Eric D. Share, Huy T. Luong and Enid A. Camps, Deputy Attorneys General, for Plaintiff and Respondent in No. S237762.

Jackie Lacey, District Attorney (Los Angeles), Roberta Schwartz and John Pomeroy, Deputy District Attorneys, for Los Angeles County District Attorney as Amicus Curiae on behalf of Plaintiff and Respondent in No. S237762.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Anne Mania
Law Office of Anne Mania
1946 Embarcadero
Oakland, CA  94606
(510) 479-1818

Enid A. Camps
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5976