Filed 12/17/24 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re | B329158 |
| TAM STEVEN NGUYEN, | (Los Angeles County Super. Ct. Nos. YA054763, BH014404) |
| on | |
| Habeas Corpus. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |

It is ordered that the opinion in this matter, filed November 27, 2024, is modified as follows:

1.  Page 2, the first full paragraph, is modified as follows: "Tam Steven Nguyen committed various crimes and was sentenced to an indeterminate prison term with the possibility of parole.  Because he is eligible for parole, Nguyen is entitled to a parole hearing, and Penal Code section 3046 establishes a minimum eligible parole date (MEPD) for when that hearing will occur.  Additionally, because Nguyen was under 26 years of age when he committed his crimes, Nguyen is entitled to a youth offender parole hearing, and Penal Code section 3051 establishes a youth parole eligible date (YPED) for when that hearing will

occur.  Nguyen thus has two parole eligibility dates, one set by the MEPD and the other by the YPED.  Per California Department of Corrections and Rehabilitation (the department) regulations, Nguyen can earn good conduct credit, milestone completion credit, rehabilitative achievement credit, educational merit credit, and extraordinary conduct credit to bring forward his MEPD.  However, those same regulations provide that only educational merit credit can bring forward his YPED; good conduct credit, milestone completion credit, rehabilitative achievement credit, and extraordinary conduct credit do not impact a youth inmate's YPED."

2.  Pages 3 to 4, the first full paragraph, is modified as follows:  "Inmates serving an indeterminate life sentence with the possibility of parole are eligible for parole.  (Pen. Code, §§ 3041, 3046.)  Penal Code section 3046 sets a MEPD for inmates like Nguyen sentenced to life in prison.  The MEPD applies to inmates regardless of age.  However, inmates like Nguyen who committed their controlling offenses[1] when they were 25 years old or younger are eligible for a youth offender parole hearing under Penal Code section 3051.  Under that section, a youth offender is eligible for parole after 15 years if sentenced to a determinate term (Pen. Code, § 3051, subd. (b)(1)), after 20 years if sentenced to an indeterminate life term of fewer than 25 years to life (*id.*, subd. (b)(2)), and after 25 years if sentenced to an indeterminate life term of 25 years to life, or to life without parole for a crime committed before the age of 18 (*id.*, subd. (b)(3),

---

"[1]     A controlling offense is the offense or enhancement on which the sentencing court imposed the longest term of imprisonment.  (Pen. Code, § 3051, subd. (a)(2)(B).)"

(4)).  The YPED thus provides for an earlier parole eligibility date.  (See *In re Brownlee* (2020) 50 Cal.App.5th 720, 725 [youth offender parole hearing is "simply one type of parole hearing"].)"

3.  Page 10, the second full paragraph is modified as follows:  "The two groups are not similarly situated for the purposes of the regulations' restriction on credits because youth and nonyouth offenders are distinguishable.  Youth offenders are persons who were under the age of 26 when they committed their controlling offense.  (Pen. Code, § 3051, subd. (a)(1).)  Youth offenders therefore have two parole eligibility dates, a MEPD under Penal Code section 3041 *and* a YPED under Penal Code section 3051.  In contrast, nonyouth offenders who committed their crimes when they were 26 years of age or older have just a MEPD under Penal Code section 3041.  By design, the YPED typically is earlier than the MEPD.  Therefore, youth and nonyouth offenders are not similarly situated with respect to how their parole eligibility dates are determined."

The petition for rehearing is denied.  There is no change in the judgment.

_____

EDMON, P.J.                    ADAMS, J.                    BERSHON, J.*

_____

\*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

3

Filed 11/27/24 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re<br><br>TAM STEVEN NGUYEN<br><br>on<br><br>Habeas Corpus. | B329158<br><br>(Los Angeles County<br>Super. Ct. Nos. YA054763,<br>BH014404) |

Petition for writ of habeas corpus.  Petition denied.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Sara J. Romano, Assistant Attorney General, Maria G. Chan, Amanda Murray, Janine W. Boomer, Brian C. Kinney and Charles Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Tam Steven Nguyen committed various crimes and was sentenced to an indeterminate prison term with the possibility of parole. Because he is eligible for parole, Nguyen is entitled to a parole hearing, and Penal Code section 3046 establishes a minimum eligible parole date (MEPD) for when that hearing will occur. Additionally, because Nguyen was under 26 years of age when he committed his crimes, Nguyen is entitled to a youth offender parole hearing, and Penal Code section 3051 establishes a youth parole eligible date (YPED) for when that hearing will occur. Nguyen thus has two parole hearing dates, one set by the MEPD and the other by the YPED. Per California Department of Corrections and Rehabilitation (the department) regulations, Nguyen can earn good conduct credit, milestone completion credit, rehabilitative achievement credit, educational merit credit, and extraordinary conduct credit to bring forward his MEPD. However, those same regulations provide that only educational merit credit can bring forward his YPED; good conduct credit, milestone completion credit, rehabilitative achievement credit, and extraordinary conduct credit do not impact a youth inmate's YPED.

Nguyen has brought this petition for writ of habeas corpus claiming that the limitation on the credits he can earn to advance his YPED violates his right to equal protection of law. As we explain, Nguyen has failed to establish either that the department's regulations impact similarly situated groups or that there is no rational basis for any disparate treatment. We therefore find that Nguyen's right to equal protection has not been violated.

2

# BACKGROUND

When he was about 22 years old, Nguyen committed various crimes, and in 2003, a jury convicted him of attempted murder (Pen. Code, §§ 664, 187, subd. (a)), kidnapping (*id.*, § 207), and assault with a firearm (*id.*, § 245, subd. (a)(2)). The jury also found true firearm allegations (*id.*, §§ 12022.53, subd. (d), 12022.5). The trial court sentenced Nguyen to a determinate term of 14 years, an indeterminate term of 25 years to life, and a life term with the possibility of parole.

While incarcerated, Nguyen has earned good conduct credit, milestone completion credit, rehabilitative achievement credit, educational merit credit, and extraordinary conduct credit. The department has applied those credits against his MEPD, which is in February 2036. The department has applied the educational merit credit against his YPED, which is in October 2026.

In 2022, Nguyen petitioned the trial court for a writ of habeas corpus, arguing that he was entitled to have his YPED advanced by good conduct credit, milestone completion credit, rehabilitative achievement credit, and extraordinary conduct credit. The trial court denied his petition. Nguyen then petitioned for a writ of habeas corpus in our court. We summarily denied the petition. Nguyen petitioned for review in the California Supreme Court, it granted review, and the court ordered us to vacate our order and issue an order to show cause.

# DISCUSSION

I.     Overview of parole eligibility dates and credits

Inmates serving an indeterminate life sentence with the possibility of parole are eligible for parole. (Pen. Code, §§ 3041,

3

3046.)  Penal Code section 3046 sets a MEPD for inmates like Nguyen sentenced to life in prison.  The MEPD applies to inmates regardless of age.  However, inmates like Nguyen who committed their controlling offenses[2] when they were 25 years old or younger are eligible for an additional parole hearing:  a youth offender parole hearing under Penal Code section 3051.  Under that section, a youth offender is eligible for parole after 15 years if sentenced to a determinate term (Pen. Code, § 3051, subd. (b)(1)), after 20 years if sentenced to an indeterminate life term of fewer than 25 years to life (*id.*, subd. (b)(2)), and after 25 years if sentenced to an indeterminate life term of 25 years to life, or to life without parole for a crime committed before the age of 18 (*id.*, subd. (b)(3), (4)).  The YPED does not replace the MEPD but is in addition to it.  (See *In re Brownlee* (2020) 50 Cal.App.5th 720, 725 [youth offender parole hearing is "simply one type of parole hearing"].)  Thus, a youth offender who is not released after a youth offender parole hearing is still entitled to a parole hearing set by the MEPD.

In 2016, voters enacted Proposition 57, the Public Safety and Rehabilitation Act of 2016, which, among other things, amended our California Constitution to give the department "authority to award credits earned for good behavior and approved rehabilitative or educational achievements."  (Cal. Const., art. I, § 32, subd. (a)(2); see *People v. Dynes* (2018) 20 Cal.App.5th 523, 526; see generally Cal. Code Regs., tit. 15,[3]

---

[2]  A controlling offense is the offense or enhancement on which the sentencing court imposed the longest term of imprisonment.  (Pen. Code, § 3051, subd. (a)(2)(B).)

[3]  All further undesignated references are to the California Code of Regulations, title 15.

§ 3043, subd. (a) [inmates "are expected to work or participate in rehabilitative programs and activities to prepare for their eventual return to society"].)  Per that constitutional mandate, the department enacted regulations giving incarcerated persons the ability to earn good conduct credit,[4] milestone completion credit,[5] rehabilitative achievement credit,[6] educational merit credit,[7] and extraordinary conduct credit.[8]  These credits advance an incarcerated person's initial parole hearing date, or MEPD, if

[4]      An award of good conduct credit requires "that an incarcerated person comply with Departmental regulations and local rules of the prison and perform the duties assigned on a regular and satisfactory basis."  (§ 3043.2, subd. (a).)

[5]      Milestone completion credit reflects "achievement of a distinct objective of approved rehabilitative programs, including academic programs, social life skills programs, Career Technical Education programs, Cognitive Behavioral Interventions (CBI) programs, Enhanced Outpatient Program group module treatment programs, or other approved programs with similar demonstrated rehabilitative qualities."  (§ 3043.3, subd. (a).)

[6]      Rehabilitative achievement credit rewards "satisfactory participation in approved group or individual activities which promote the educational, behavioral, or rehabilitative development of an incarcerated person."  (§ 3043.4, subd. (a).)

[7]      Educational merit credit rewards "a significant academic accomplishment which will provide incarcerated persons with life-long rehabilitative benefits."  (§ 3043.5, subd. (a).)

[8]      Extraordinary conduct credit rewards an incarcerated person for performing a "heroic act in a life-threatening situation" or for "exceptional assistance in maintaining the safety and security of a prison."  (§ 3043.6, subd. (a).)

the person has been sentenced to an indeterminate term with the possibility of parole. Credits are subject to forfeiture. Thereafter, our Legislature gave youth offenders a similar opportunity to earn credit against their YPED. In 2020, our Legislature enacted Assembly Bill No. 965 (Stats. 2019, ch. 577, § 2), which added subdivision (j) to Penal Code section 3051. That subdivision provides that the department may authorize youth offenders to "obtain an earlier" YPED "by adopting regulations pursuant to subdivision (b) of Section 32 of Article 1 of the California Constitution."[9] (Pen. Code, § 3051, subd. (j).) The department subsequently issued regulations authorizing educational merit credit to "advance an incarcerated person's" YPED. (§§ 3043, subd. (f), 3043.5.) However, good conduct credit, milestone completion credit, rehabilitative achievement credit, and extraordinary conduct credit expressly "shall not advance an incarcerated person's" YPED. (§ 3043, subd. (f).)

In summary, good conduct credit, milestone completion credit, rehabilitative achievement credit, educational merit credit, and extraordinary conduct credit advance an inmate's MEPD. But only educational merit credit advances an inmate's YPED.

II.     Equal protection

Nguyen claims that the difference in how the department awards credits against an inmate's MEPD and YPED violates equal protection. We conclude that no violation has occurred.

---

[9]     California Constitution, article I, section 32, subdivision (b), provides that the department "shall adopt regulations in furtherance of these provisions," and the department's secretary "shall certify that these regulations protect and enhance public safety."

6

A. *Principles of equal protection*

No state may "deny to any person within its jurisdiction the equal protection of the laws" under the federal constitution's equal protection clause. (U.S. Const., 14th Amend.) The equal protection clause thus directs that all similarly situated persons be treated alike. (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).) " 'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' " (*Ibid.*) However, equal protection does not mean "that different things must be treated as though they are the same." (*In re C.B.* (2018) 6 Cal.5th 118, 134; *People v. Guzman* (2005) 35 Cal.4th 577, 591 [equal protection does not require uniform application of law to persons who are different].) Determining whether an equal protection violation has occurred generally involves a two-part inquiry. (*Hardin, supra,* 15 Cal.5th at p. 848.) First, has the state adopted a classification affecting similarly situated groups in an unequal manner? (*Ibid.*) At this first stage of the inquiry, we ask whether the groups are similarly situated for purposes of the challenged law, not whether they are similarly situated for all purposes. (*Ibid.*; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 252–253.) If the groups are not similarly situated, then there is no equal protection violation.

*Hardin, supra,* 15 Cal.5th at page 849, also found that in cases involving challenges to classifications appearing on the face of the law, the first prong of the inquiry serves no purpose. Instead, the "only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Id.* at pp. 850–851.) However, the court did not question the "utility of 'similarly situated' inquiries in other contexts. In cases that do not involve

challenges to classifications appearing on the face of the law, to ask whether a person has been treated differently from another person similarly situated is typically how we determine whether a person has been treated differently on the basis of group membership or another actionable basis.  We do not call into question the established role the similarly situated inquiry plays in, for instance, cases involving claims of group-based discrimination against individuals, in which plaintiffs bear the burden of showing disparate treatment along class lines, or so-called 'class of one' cases that do not allege differential treatment on the basis of class membership." (*Id.* at p. 851.)

If the groups are similarly situated in all material respects, then the second inquiry is whether the challenged classification is justified, utilizing the appropriate standard of review.  (*Hardin*, *supra*, 15 Cal.5th at p. 848.)  Where, as here, the challenged classification does not involve a suspect classification based on, for example, race or gender, we apply a rational basis review, sustaining the classification if it is rationally related to a legitimate state interest.  (*Ibid.*)  Only if there is no rational relationship between a disparity in treatment and some legitimate government purpose will an equal protection violation be found.  (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)  "This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny.  Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*People v. Chatman* (2018) 4 Cal.5th 277, 289.)

The party challenging the law has the burden of showing that the challenged difference in treatment is not adequately justified under the applicable standard of review. (*Hardin*, *supra*, 15 Cal.5th at p. 851.)

Here, where the parties have addressed the equal protection issue under the traditional two-part inquiry, we do so as well, beginning with whether the groups Nguyen identifies are similarly situated.

## B. *Similarly situated groups*

Nguyen asserts that youth and nonyouth offenders are similarly situated because both seek early release from custody by earning credits. As we explain, Nguyen fails to meet his burden of showing that these groups are similarly situated for the purpose of the challenged law.

*Briggs v. Brown* (2017) 3 Cal.5th 808 (*Briggs*) is instructive on how to analyze whether groups are similarly situated. *Briggs* addressed an equal protection challenge to Proposition 66's restriction on successive habeas corpus petitions by prisoners sentenced to death. The petitioner argued that persons sentenced to death were similarly situated to noncapital persons because both had the same interest in freedom from illegal or unjust convictions or sentences. (*Id.* at p. 842.) The court found this "characterization of the interest at stake" overly broad. (*Ibid.*) The question instead was whether capital and noncapital prisoners were similarly situated for purposes of the law's restrictions on the filing of successive petitions. (*Id.* at pp. 842–843.) The court concluded that the two groups were not similarly situated because the law addressed issues particular to capital postconviction proceedings; for example, capital defendants receive postconviction counsel and investigative funds, and

9

abusive successive writ practices are more common in capital cases. (*Id.* at pp. 842–845 & fn. 21.)

As in *Briggs*, Nguyen's characterization of the interest at stake, i.e., youth and nonyouth inmates' shared interest in accessing credits to obtain early release, is overly broad. (*Briggs, supra*, 3 Cal.5th at 842; see *Hardin, supra,* 15 Cal.5th at p. 848 [we ask whether the groups are similarly situated for purposes of the challenged law, not for all purposes].) The appropriately tailored question is whether youth and nonyouth offenders are similarly situated for the purposes of the regulation's restriction that good conduct credit, milestone completion credit, rehabilitative achievement credit, and extraordinary conduct credit count only against the MEPD and not the YPED.

The two groups are not similarly situated for the purposes of the regulations' restriction on credits because youth and nonyouth offenders are distinguishable. Youth offenders are persons who were under the age of 26 when they committed their controlling offense. (Pen. Code, § 3051, subd. (a)(1).) Youth offenders therefore have two parole eligibility dates, a MEPD under Penal Code section 3041 *and* a YPED under Penal Code section 3051. The YPED typically is earlier than the MEPD, and a youth offender who is not granted parole at a youth offender parole hearing gets another opportunity for parole at a parole hearing under the MEPD. In contrast, nonyouth offenders who committed their crimes when they were 26 years of age or older have just one parole eligibility date, a MEPD under Penal Code section 3041. Therefore, the two groups are not similarly situated with respect either to the number of parole hearings to which they are entitled or to how the parole eligibility dates are determined for each of those hearings.

Further, youth offenders are not treated differently from nonyouth offenders for purposes of awarding credits. *All* parole-

10

eligible incarcerated persons sentenced to a life term—including Nguyen—are eligible to have good conduct credit, milestone completion credit, rehabilitative achievement credit, educational merit credit, and extraordinary conduct credit applied against their MEPD.  A subset of incarcerated persons—youth offenders like Nguyen—receive the *additional* benefit of having educational merit credit applied to their YPED.  Nguyen is not being treated differently from any other parole-eligible inmate.  As a parole-eligible inmate serving a life sentence, he receives the same credits as all other inmates with a MEPD.  As a youth inmate, he receives the same credits as inmates with a YPED and MEPD.  Nguyen is therefore eligible for all types of credit; the only difference is in which credits are counted against his MEPD versus his YPED.  There is no similarly situated group that is being treated differently from any group to which Nguyen belongs.

### C. *Rational basis*

Because Nguyen has failed to establish the first prong of his equal protection challenge, we need not consider whether there is a rational basis for any disparate treatment.  Nonetheless, we consider the second prong of an equal protection violation inquiry and find a rational basis for any disparity in the way credits are awarded.

Juvenile offenders are treated differently for purposes of parole eligibility.  This is because they are "constitutionally different" from adults for sentencing purposes.  (*Miller v. Alabama* (2012) 567 U.S. 460, 471.)  "Because juveniles have diminished culpability and greater prospects for reform," " 'they are less deserving of the most severe punishments.' "  (*Ibid.*, citing *Graham v. Florida* (2010) 560 U.S. 48, 68 [life without parole is unconstitutional for juvenile nonhomicide offenders]; see

11

also *Roper v. Simmons* (2005) 543 U.S. 551 [8th Amend. bars death penalty for juvenile offenders].) Children lack maturity and have an underdeveloped sense of responsibility that leads to recklessness, impulsivity, and heedless risk-taking. (*Miller*, at p. 471.) They are more vulnerable to negative influences and pressures and lack control over their environment to extricate themselves from crime-producing settings. (*Ibid.*) A child's character is not as well-formed as an adult's and is more amenable to rehabilitation. (*Ibid.*) Although courts do not treat juveniles (persons under the age of 18) and youths (those over the age of 18) the same for all purposes (see, e.g., *People v. Powell* (2018) 6 Cal.5th 136, 191 [death penalty for 18 year old with "intellectual shortcomings" does not violate federal and state constitutions]), our Legislature extended Penal Code section 3051 relief to youths, as science shows that youths' brains continue to develop into their twenties (*Hardin, supra*, 15 Cal.5th at p. 846).

In response to this evolving understanding of youth criminal culpability, our Legislature enacted Penal Code section 3051, which established a parole eligibility mechanism that provides a person serving a sentence for crimes committed as a juvenile or youth under the age of 26 the opportunity to obtain release when the person has been rehabilitated and gained maturity. (Stats. 2013, ch. 312, § 1; see also *In re Williams* (2020) 57 Cal.App.5th 427, 434 [Legislature was motivated by concerns about lengthy life sentences inadequately accounting for diminished culpability of juvenile and youth offenders and their greater potential for rehabilitation and maturation].) Penal Code section 3051 reflects the law's understanding of these differences between juveniles and youth offenders on the one hand and nonyouth offenders on the other. The section accordingly confers a significant benefit to youth offenders by affording them a fixed

YPED based on the sentence for the controlling offense. In many instances, the YPED will occur significantly before the MEPD.

Here, for example, Nguyen was sentenced to an indeterminate life term of 25 years to life on his controlling offense, so his YPED is scheduled for 2026, a full decade before his MEPD, which is scheduled for 2036. In determining that the YPED can be offset by only educational merit credit, which cannot be forfeited when applied to the YPED, the YPED remains relatively fixed. (§ 3043.5, subds. (f), (h).) This contrasts with good conduct credit, milestone completion credit, rehabilitative achievement credit, extraordinary conduct credit, and educational merit credit, all of which can be earned, forfeited, and restored when applied to the MEPD, thereby making the MEPD a fluctuating date. (§§ 3043.2, subd. (d) [forfeiture and restoration of good conduct credit]; 3043.3, subd. (h) [forfeiture and restoration of milestone completion credit]; 3043.4, subd. (i) [forfeiture and restoration of rehabilitative achievement credit]; 3043.5, subd. (f) [forfeiture and restoration of educational merit credit]; 3043.6, subd. (d) [forfeiture and restoration of extraordinary conduct credit].) Based on the already significant benefit afforded only to youth offenders and on Penal Code section 3051's careful calibration of the YPED to the sentence on the controlling offense, the department could rationally conclude that youth offenders should not benefit further from an award of credit other than educational merit credit.[10] (See *People v. Franklin* (2016) 63 Cal.4th 261, 278 [Pen. Code, § 3051

---

[10] Because we determine that a rational basis for any disparate treatment exists on this ground, we need not address whether the department's alleged technological limitations provide another rational basis for such treatment as argued by the Attorney General.

13

"establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile has 'rehabilitated and gained maturity' . . . so that [the juvenile] may have 'a meaningful opportunity to obtain release' "].) The credit limitation thus ensures that the youth offender ameliorative scheme in Penal Code section 3051 operates as the Legislature intended.

There may be sound policy reasons for awarding good conduct credit, milestone completion credit, rehabilitative achievement credit, and extraordinary conduct credit against inmates' YPED, both in view of Penal Code section 3051's purpose and to further incentivize youth offenders to improve themselves and to prepare for life outside of prison. However, the logic behind a regulatory decision need not be persuasive or sensible; it need merely be rational. (See *People v. Chatman*, *supra*, 4 Cal.5th at p. 289.) We cannot invalidate a law under the equal protection clause because we might conclude its tradeoffs seem unwise or unfair. (*Ibid.*) In such circumstances, as here, the matter is one of policy, not of equal protection.

## DISPOSITION

Tam Nguyen's petition for writ of habeas corpus is denied.

**CERTIFIED FOR PUBLICATION**


                                        EDMON, P. J.


We concur:



                    ADAMS, J.



                    BERSHON, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the
Chief Justice pursuant to article VI, section 6 of the California
Constitution.


15