Filed 3/10/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078723 |
| v. | (Super.Ct.No. FCH04170) |
| MY NGO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Kimberly J. Grove and Leslie Ann Rose, under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Senior Assistant Attorneys General, and Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant My Ngo was a "shotcaller" in a Vietnamese gang.  (*People v. Ngo* (June 7, 2006, E036143) 2006 Cal. App. Unpub. LEXIS 4911 at pp. *22-23 [nonpub.

1

opn.].)  In 2000, when he was 19, he committed murder for hire; for $2,000, he shot the victim in the head.  (*Id*. at pp. *2, *11, *13, *18, *25.)

In 2021, he filed a motion for a "*Franklin* hearing."  (Italics added.)  As we will discuss, a *Franklin* hearing allows a juvenile offender[1] to preserve evidence of youth-related mitigating factors for purposes of a youthful offender parole hearing to be held in the future pursuant to Penal Code section 3051.[2]  (See *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).)  Under section 3051, juvenile offenders and most youthful offenders are entitled to a youthful offender parole hearing; however, youthful offenders sentenced to life without parole (LWOP) are not.  As defendant was a youthful offender sentenced to LWOP, the trial court ruled that he was not entitled to a *Franklin* hearing.

Defendant contends that section 3051's distinction between youthful offenders with LWOP and non-LWOP sentences violates equal protection.  Alternatively, he contends that he should have been granted a hearing to preserve evidence of youth-related mitigating factors for other purposes, such as a hypothetical future resentencing under section 1172.1.  We disagree with both contentions.  Hence, we will affirm.

---

[1]    We will use "juvenile offender" to mean a person convicted of a crime committed when he or she was under 18.  We will use "youthful offender" to mean a person convicted of a crime committed when he or she was between 18 and 25.

[2]    Further statutory citations are to the Penal Code, unless otherwise indicated.

# I

# STATEMENT OF THE CASE

In 2004, defendant was found guilty of first degree murder (§§ 187, subd. (a), 189, subd. (a)), with a financial gain special circumstance (§ 190.2, subd. (a)(1)) and with an enhancement for personally and intentionally discharging a firearm, causing death (§ 12022.53, subd. (d)); and unlawful possession of a firearm (former § 12021, subd. (a)(1); see now § 29800, subd. (a)(1)).  He admitted one "strike" prior.  (§§ 667, subds. (b)-(i), 1170.12.)  He was sentenced to LWOP for the special circumstances murder, plus 25 years to life for the enhancement; all other terms were either stayed or run concurrently.

In 2021, defendant, in pro. per., filed a motion for a hearing "to present evidence of mitigating factors . . . that was not introduced . . . at the time of sentencing," purportedly on the authority of *Franklin*.  He argued that such a hearing was necessary to preserve evidence "for future . . . (A) commutation reviews, (B) P.C. 1170(d)(1) resentencing, (C) recommendations for reduce[d] sentences, (D) youth offender considerations, (E) changes of laws in regards to mitigating factors, (F) youth offender parole hearings, and other future law changes."

The trial court appointed counsel for defendant.  At the hearing on the motion, defense counsel submitted without argument.  The trial court denied the motion; it ruled that defendant was "ineligible for . . . *Franklin* relief" (italics added) because he "was 19

3

years old at the time the offense was committed" and "was sentenced to life without the possibility of parole."

## II

## LEGAL BACKGROUND

In *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), the United States Supreme Court held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." (*Id*. at p. 74.)  It reasoned, in part, that "because juveniles have lessened culpability they are less deserving of the most severe punishments.  [Citation.]  As compared to adults, juveniles have a '"lack of maturity and an underdeveloped sense of responsibility"'; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.'  [Citation.]  These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'  [Citation.]"  (*Id*. at p. 68.)

In *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*), the Supreme Court extended *Graham* by holding that the Eighth Amendment prohibits a *mandatory* LWOP sentence for a juvenile offender, even for homicide.  (*Id*. at pp. 465, 479.)  It explained, in part, that "a sentencer [must] have the ability to consider the 'mitigating qualities of youth.' [Citation.]"  (*Id*. at p. 476.)

4

In *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), our Supreme Court extended *Graham* and *Miller* still further. It held that sentencing a juvenile offender to a de facto life term for a nonhomicide offense constitutes cruel and unusual punishment. (*Id*. at p. 268.)

*Caballero* added: "We urge the Legislature to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Caballero*, *supra*, 55 Cal.4th at p. 269, fn. 5; see also *id*. at p. 273 [conc. opn. of Werdegar, J.].)

In 2013, in response to *Caballero*, the Legislature enacted section 3051. (Former § 3051, Stats. 2013, ch. 312, § 4.) Its stated purpose was "to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity," in accordance with, inter alia, *Miller*. (Stats. 2013, ch. 312, § 1.)

As originally enacted, it applied only to juvenile offenders. (Former § 3051, subds. (a)(1), (b), Stats. 2013, ch. 312, § 4.) Like the current statute, it excluded offenders sentenced to LWOP. (Former § 3051, subds. (b), (h), Stats. 2013, ch. 312, § 4.) In 2015, however, it was amended so as to also apply to youthful offenders under 23. (Former § 3051, subds. (a)(1), (b), Stats. 2015, ch. 471, § 1.) In 2017, it was amended

5

again so as to also apply to youthful offenders 25 or younger.  (§ 3051, subds. (a)(1), (b), Stats. 2017, ch. 675, § 1.)

It defines "controlling offense" as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment."  (§ 3051, subd. (a)(2)(B).) It then provides, as relevant here:  "A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger . . . shall be eligible for release on parole at a youth offender parole hearing . . . ."  (§ 3051, subds. (b)(1), (b)(2), (b)(3), (b)(4).)  However, it excludes youthful offenders who were convicted of a controlling offense for which the sentence is LWOP.  (§ 3051, subds. (b), (h).)

In *Franklin*, the defendant argued that a sentence of 50 years to life for a crime that he committed when he was 16 was the functional equivalent of an LWOP sentence and therefore violated *Miller*.  (*Franklin*, *supra*, 63 Cal.4th at pp. 268, 273.)

Our Supreme Court, however, held that the argument was moot in light of the enactment of sections 3051 and 4801.  (*Franklin*, *supra*, 63 Cal.4th at pp. 268, 276-277.) Section 4801 requires the Board of Parole Hearings (Board), in evaluating a juvenile or youthful offender, to "give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner . . . ."  (§ 4801, subd. (c).)

The defendant argued, however, that "the Board will not be able to give great weight to these characteristics at a youth offender parole hearing because 'there would be no reliable way to measure his cognitive abilities, maturity, and other youth factors when

6

the offense was committed 25 years prior.'" (*Franklin*, *supra*, 63 Cal.4th at p. 282.) The Supreme Court therefore further held that he was entitled to a limited remand for a hearing on "whether he was given adequate opportunity at sentencing to make a record of mitigating evidence tied to his youth." (*Id.* at p. 269.)

It added, "If the trial court determines that Franklin did not have sufficient opportunity, then . . . Franklin may place on the record any [evidence] that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors. The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors [citation] . . . ." (*Franklin*, *supra*, 63 Cal.4th at p. 284.)

III

EQUAL PROTECTION

In supplemental briefing, defendant contends that section 3051 violates equal protection, because it denies a youth offender parole hearing to youthful offenders sentenced to LWOP while granting one to all other youthful offenders, including those sentenced to 25 years to life.[3]

---

[3] We ordered supplemental briefing on the following issue: "Is defendant entitled to a *Franklin* hearing . . . because Penal Code section 3051, subdivisions (b) and

*[footnote continued on next page]*

Defendant did not raise this contention either below or in his opening brief. The People therefore contend that he forfeited it. At both times, however — as we will discuss in more detail below — appellate opinions were unanimous that the challenged distinction did not violate equal protection. Thus, this contention would have appeared futile; this is an exception to forfeiture rules. (See *People v. Perez* (2020) 9 Cal.5th 1, 7-8.) Moreover, it presents a pure question of law on undisputed facts, such as we have discretion to address for the first time on appeal. (See *People v. Heard* (2022) 83 Cal.App.5th 608, 626 [equal protection].)

When no suspect class and no fundamental right is implicated, "[i]n order to decide whether a statutory distinction . . . is unconstitutional as a matter of equal protection, we typically ask two questions. We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. [Citation.] If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose. [Citation.] A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable. [Citations.] The underlying rationale for a statutory

---

(h), making him ineligible for a youthful offender parole hearing, violate equal protection?"

In response, the only distinction that defendant challenges is as between youthful offenders with LWOP and non-LWOP sentences. We deem him to have forfeited any challenge to any other distinction made by section 3051.

8

classification need not have been 'ever actually articulated'" by lawmakers, and it does not need to 'be empirically substantiated.' [Citation.] Nor does the logic behind a potential justification need to be persuasive or sensible — rather than simply rational. [Citation.]" (*People v. Chatman* (2018) 4 Cal.5th 277, 289.)

These two questions are not wholly independent. If there is a rational basis for the unequal treatment, then in that respect, the two classes are not similarly situated. Conversely, if the two classes are not similarly situated, that, in itself, is a rational basis for unequal treatment. The federal courts collapse the two questions into just one: Whether there is a rational basis for the unequal treatment. (*Armour v. City of Indianapolis, Ind.* (2012) 566 U.S. 673, 680.) Nevertheless, out of obedience to the California Supreme Court, we treat these as two separate questions. However, we assume, without deciding, that the two classes are similarly situated.

Even if so, there are several rational bases for the unequal treatment.

For one thing, section 3051 was enacted in response to *Caballero*. In *Caballero*, the Supreme Court called for "legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Caballero*, *supra*, 55 Cal.4th at p. 269, fn. 5, italics added.) It did not call for such a mechanism for any defendants — whether juvenile, youthful, or otherwise — serving a de jure LWOP sentence. The Legislature could rationally limit its response accordingly.

9

For another, section 3051 provides for a youthful offender *parole* hearing. A youthful offender sentenced to LWOP is not entitled to *parole* at all. Just like all other adult offenders convicted of murder with special circumstances, a youthful offender convicted of murder with special circumstances must actually spend the rest of his or her life in prison.

If any further justification is needed, we find it in the difference in culpability. A person guilty of murder with special circumstances is the worst of the worst. This is the most heinous crime known to our Penal Code, and one of the few crimes subject to the death penalty in California. (§ 190; see also §§ 37 [treason], 128 [procuring execution of innocent person by perjury], 219 [train wrecking causing death].) In *Graham*, the Supreme Court held that "for a juvenile offender *who did not commit homicide* the Eighth Amendment forbids the sentence of life without parole." (*Graham*, *supra*, 560 U.S. at p. 74, italics added.) It recognized that murder is different: "Although an offense like robbery or rape is 'a serious crime deserving serious punishment,' [citation], those crimes differ from homicide crimes in a moral sense." (*Id*. at p. 69.) Thus, in a homicide case, it allowed a life without parole sentence for a juvenile offender, as "a risk to society for the rest of his life," despite its concern in nonhomicide cases about the difficulty of determining whether a juvenile is incorrigible. (See *id*. at pp. 72-73.)

Likewise, first degree murder with a special circumstance differs from ordinary first degree murder in a moral sense. "'It is the prerogative, indeed the duty, of the

10

Legislature to recognize degrees of culpability when drafting a Penal Code.' [Citation.]" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 840.)

For these reasons, a long line of cases have rejected the equal protection claim defendant makes here: *People v. Sands* (2021) 70 Cal.App.5th 193, 204-205 [First Dist., Div. Five]; *People v. Morales* (2021) 67 Cal.App.5th 326, 347-349 [First Dist., Div. Four]; *People v. Jackson* (2021) 61 Cal.App.5th 189, 199-200 [Fourth Dist., Div. One]; *People v. Acosta* (2021) 60 Cal.App.5th 769, 780-781 [Fourth Dist., Div. Three]; *In re Williams* (2020) 57 Cal.App.5th 427, 433-436 [Second Dist., Div. Five].

Until recently, the only dissenting voice was that of Justice Pollak. (*In re Jones* (2019) 42 Cal.App.5th 477, 483-488 [conc. opn. of Pollak, J.] [First Dist., Div. Four].) Moreover, he merely mused that section 3051 "does not *necessarily* withstand scrutiny" (*id*. at p. 483; see also *id*. at p. 486, italics added) and acknowledged that the issue was not actually before the court. (*Id*. at pp. 483-484.)

Recently, however, one court broke ranks. *People v. Hardin* (2022) 84 Cal.App.5th 273 [Second Dist., Div. Seven], pet. for rev. filed Nov. 28, 2022 (*Hardin*), held that section 3051's distinction between youthful offenders with LWOP and non-LWOP sentences *does* violate equal protection.

In the "similarly situated" portion of the inquiry, it reasoned that "[s]ection 3051 is decidedly not a sentencing statute. As amended in 2017 to expand its reach to young adult offenders under the age of 26, its purpose was not to assess culpability or measure the appropriate level of punishment for various crimes, but 'to account for neuroscience

11

research that the human brain — especially those portions responsible for judgment and decisionmaking — continues to develop into a person's mid-20's. [Citations.]" (*Hardin*, *supra*, 84 Cal.App.5th at p. 287.) It concluded, "Viewed in light of section 3051's intended purpose of permitting a determination whether a person who committed a serious or violent crime between the age of 18 and 25 has sufficiently matured and outgrown the youthful impulses that led to the commission of the offense, an individual serving a parole-eligible life sentence and a person who committed an offense at the same age serving a sentence of life without parole are similarly situated." (*Ibid.*)

In the "rational basis" portion of the inquiry, it concluded that "if, as the Legislature stated, *the goal of section 3051* was to apply the *Miller* youth-related mitigating factors to young adults up to the age of 26 in light of neuroscience research that demonstrated the human brain continues to develop into a person's mid-20's, and thus to permit youth offenders a meaningful opportunity for parole if they demonstrate increased maturity and impulse control, then *for that purpose* there is no plausible basis for distinguishing between same-age offenders based solely on the crime they committed. [Citation.]" (*Hardin*, *supra*, 84 Cal.App.5th at p. 288, italics added.)

Actually, section 3051 *is*, in part, a sentencing statute. It does not make all youthful offenders eligible for parole at the same point in their incarceration. Rather, a youthful offender sentenced to a determinate term becomes eligible for parole in his or her 15th year of imprisonment (§ 3051, subd. (b)(1)); a youthful offender sentenced to an indeterminate term of less than 25 years to life becomes eligible for parole in his or her

12

20th year of imprisonment (§ 3051, subd. (b)(2)); and a youthful offender sentenced to an indeterminate term of 25 years to life becomes eligible for parole in his or her 25th year of imprisonment (§ 3051, subd. (b)(3)). This is true even though all three sets of youthful offenders have been simultaneously maturing and outgrowing their youthful impulses. Thus, cutting off the most culpable youthful offenders from parole entirely is not inconsistent with the goals of section 3051.

Moreover, the "similarly situated" inquiry is intended to be limited. "'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."'" [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328.) By contrast, the "rational basis" inquiry is *not* limited to the purposes of the challenged law. (E.g., *In re C.B.* (2018) 6 Cal.5th 118, 134 [in setting a date cutoff for retention of DNA samples, "the voters rationally could differentiate between those who have submitted samples and those who have not based on cost considerations."].) The *Hardin* court, however, looked at the rational basis for the distinction strictly in terms of "the goal of section 3051." (*Hardin*, *supra*, 84 Cal.App.5th at p. 288.) We concur with those courts that have sought and found a rational basis for the challenged distinction in other sentencing considerations.

Finally, *Hardin* rejected "relative culpability" as a rational basis. It reasoned that section 3051 makes youthful offenders with a de facto LWOP sentence eligible for parole, but not youthful offenders with a de jure LWOP sentence: "The crime of a 20-year-old offender who shot and killed his victim while attempting to commit robbery and

13

was sentenced to life without parole [citation] cannot rationally be considered more severe than those of a 20-year-old who shot and killed his victim one day, committed a robbery the next, and was sentenced to an indeterminate term of 50 years to life [citation], or who committed multiple violent crimes . . . and received a parole-eligible indeterminate life term that far exceeded his or her life expectancy." (*Hardin, supra,* 84 Cal.App.5th at p. 289.) *Hardin* recognized that "when addressing a problem, the Legislature may choose to proceed incrementally. [Citations.]" (*Id*. at pp. 290-291.) It concluded, however, that "there still must be some rational basis for the choices made. [Citation.]" (*Id*. at p. 291.)

Equal protection, however, allows not only *incremental* regulation, but also *incomplete* regulation. "'[W]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends"' [citation], or 'because it may be "to some extent both underinclusive and overinclusive"' [citation]. Consequently, any plausible reason for distinguishing between [two classes] *need not exist* in every scenario in which the statutes might apply." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887, italics added.) "'[A] legislature need not run the risk of losing an entire remedial scheme simply because it failed, *through inadvertence* or otherwise, to cover every evil that might conceivably have been attacked.' [Citation.]" (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 488, italics added.)

In any event, the Legislature could rationally distinguish between youthful offenders with de jure and de facto LWOP sentences. A de jure LWOP sentence provides a bright-line test. Moreover, using a special circumstance as a bright-line test of culpability is well-established. By contrast, there is no established test of the culpability of a youthful offender with a de facto LWOP sentence. Evidently *Hardin* viewed a de facto LWOP sentence itself as an equivalent bright-line test, but the Legislature did not have to; in light of the many combinations of circumstances that could result in a de facto LWOP sentence, it could rationally leave the assessment of the culpability of such an offender up to a future Board. A youthful offender with a de facto LWOP sentence is not necessarily entitled to *parole*. He or she is merely entitled to a youthful offender parole *hearing*. Thus, an offender who slips through the Legislature's coarse special-circumstances net may yet be caught in the Board's finer mesh.

*Caballero* was not an equal protection case. It did not address the issue of whether the Legislature could rationally distinguish between offenders with de jure and de facto LWOP sentences. It was based on the Eighth Amendment; it merely held that the reasons why a de jure LWOP sentence for a juvenile convicted of a nonhomicide offense constitutes cruel and unusual punishment apply equally to a de facto LWOP sentence.

Accordingly, we hold that section 3051 does not violate equal protection merely because it singles out youthful offenders sentenced to LWOP from all other youthful offenders.

## IV

## A *FRANKLIN* HEARING FOR OTHER PURPOSES

Defendant also contends that he was entitled to a *Franklin* hearing for purposes other than preserving evidence for a future youth offender parole hearing under section 3051.

*Franklin* was concerned exclusively with juvenile offenders who, as such, were entitled to a youthful offender parole hearing. Here, however, defendant was sentenced to LWOP for a crime that he committed when he was over 18. He is therefore categorically ineligible for a youth offender parole hearing. (§ 3051, subds. (b), (h).) It follows that there is no need for a *Franklin* hearing.

*Franklin* was a direct appeal from a conviction. *In re Cook* (2019) 7 Cal.5th 439 (*Cook*) extended the availability of a *Franklin* hearing to a juvenile offender whose conviction and sentence have become final. Specifically, it held that "an offender entitled to a [youth offender parole] hearing . . . may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final." (*Id*. at p. 451.)

The court acknowledged one obstacle — "'"In most cases, after the judgment has become final, there is nothing pending to which a motion may attach."'" [Citation.]" (*Cook*, *supra*, 7 Cal.5th at p. 451.) It found the necessary statutory authority in section 1203.01, subdivision (a). (*Id*. at pp. 452-453.) That subdivision allows the prosecutor, defense counsel, and the trial judge to file statements of their views regarding the

defendant and the crime.  (§ 1203.01, subd. (a).)  The clerk must mail the statements to prison officials.  (*Ibid*.)

The court still faced one further obstacle — the wording of section 1203.01 does not authorize a contested evidentiary hearing.  Thus, the court additionally relied on Code of Civil Procedure section 187 (*Cook*, *supra*, 7 Cal.5th at pp. 454-455), which provides, "When jurisdiction is . . . conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."  The court concluded, "Penal Code section 1203.01, augmented by the court's inherent authority to craft necessary procedures under Code of Civil Procedure section 187, authorizes it to preserve evidence as promptly as possible for future use by the Board."  (*Id*. at p. 455.)

*Cook*, too, was limited to offenders entitled to a youthful offender parole hearing.  For example, it emphasized "the significance of *Franklin*'s evidence preservation function in the statutory scheme" (*Cook, supra,* 7 Cal.5th at p. 449) and "the role a *Franklin* proceeding plays in the youth offender parole process."  (*Id*. at p. 450.)  It said, "'[t]he statutory text makes clear that the Legislature intended youth offender parole hearings to apply retrospectively, that is, to *all eligible youth offenders regardless of the date of conviction.*'  [Citation.]  By a parity of reasoning, an evidence preservation process should apply to all youthful offenders now eligible for such a parole hearing."

(*Ibid*., italics omitted.) Finally, it stated its holding thus: "[W]e hold that *an offender entitled to a hearing under section*[] *3051 . . .* may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final." (*Id*. at p. 451, italics added.)

There is no indication that *Cook* intended the hybrid section 1203.01/Code of Civil Procedure section 187 procedure it had crafted to be available in any other context. Code of Civil Procedure section 187, in particular, is phrased in terms of necessity. Given the decision in *Franklin*, *Cook* found it necessary to extend a similar remedy to juvenile offenders whose convictions were final. There is no such necessity here.

Defendant argues that he needs a *Franklin* hearing because he could "potentially" be resentenced under section 1172.1.[4] That section allows a trial court to resentence a defendant at any time on the recommendation of, among others, the Department of Corrections and Rehabilitation, the Board, or the district attorney. (§ 1172.1, subd. (a)(1).) The sentence the trial court imposed here, however, was the mandatory minimum: LWOP for first degree murder with special circumstances (§ 190.2, subd. (a)), plus a consecutive 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)). All other terms were either stayed or run concurrently. Thus, the trial court would have no discretion to resentence him to any lower sentence.

---

   **4** Section 1172.1 was originally enacted as section 1170.03. (Stats. 2021, ch. 719, § 3.1.) Effective June 30, 2022, it was amended and renumbered. (Stats. 2022, ch. 58, § 9.)

We recognize that, under section 1172.1, provided the district attorney concurs, a trial court can — but is not required to — reduce a conviction to a lesser included offense.  (§ 1172.1, subd. (a)(3)(B).)  Even if defendant's conviction were reduced to second degree murder, however, the sentence would still be mandatory — 15 years to life.  (§ 190, subd. (a).)  Only if it were reduced to voluntary or involuntary manslaughter would the trial court have any sentencing discretion, and thus any reason to consider youth-related mitigating circumstances.  (§ 193, subds. (a), (b).)[5]

Defendant, a gang shot-caller, committed murder for hire in cold blood.  The likelihood that a future district attorney would recommend reducing his conviction to manslaughter is infinitesimal.  Even if this fantasy materialized, almost certainly the district attorney would recommend a sentence and insist that defendant agree to it.

The bottom line is that the possibility that defendant will ever need additional evidence relevant to resentencing is speculative, at best.  In the *Cook* situation, provided a youthful offender lives long enough, it is a certainty that he or she will become entitled to a youth offender parole hearing.  Here, by contrast, it is a near-certainty that defendant will never become entitled to a hearing under section 1172.1.  At a minimum, the

---

[5]    Section 1172.1 does not appear to authorize the trial court to reduce an enhancement to a lesser included enhancement.  However, even if the trial court reduced the firearm enhancement here to an enhancement under section 12022.53 subdivision (b) or (c), the sentence would still be mandatory — a consecutive 10 or 20 years, respectively.

Only if the trial court reduced the crime to manslaughter (see § 12022.53, subd. (a)) and/or reduced the firearm enhancement to an enhancement under section 12022.5, subdivision (a) would it have any sentencing discretion on the enhancement.

19

likelihood that he will ever need to present youth-related mitigating evidence is insufficient to justify forcing the court, counsel, and witnesses to expend scarce resources to preserve evidence for a hearing that probably will never happen.

Defendant also argues that he needs a *Franklin* hearing because "section 3051 may ultimately be amended" so as to make him eligible for a youth offender parole hearing. This scenario is even more speculative than the previous one. Almost any statute could be amended — or a new one enacted — so as to provide almost anything. As the People aptly point out, "Under appellant's reasoning, every defendant may be entitled to a *Franklin*-type hearing, regardless of sentence or age . . . . That scenario would be untenable . . . ."

We therefore conclude that the trial court properly denied defendant's motion for a *Franklin* hearing.

V

DISPOSITION

The order appealed from is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
                                                                                         P. J.

We concur:

McKINSTER
                              J.

MILLER
                              J.

20