Filed 7/1/25  P. v. Torres CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAUL TORRES,<br><br>    Defendant and Appellant. | F087844<br><br>(Super. Ct. No. F13905713)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Appellant Raul Torres appeals from the denial of his Penal Code section 1172.6[1] resentencing petition at the prima facie stage. Convicted of first degree murder in 2017 based on the shooting of a victim from a vehicle, appellant claims he is potentially eligible for resentencing under section 1172.6 because Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) affected the gang evidence that would be relevant to the charges. Due to this, and in conjunction with the gang-evidence limiting instruction given to the jury under CALCRIM No. 1403, appellant asserts it is possible the jury convicted him of first degree murder by imputing malice to him solely by virtue of his gang association, and an evidentiary hearing is warranted under these circumstances. Appellant additionally argues denial of his claim at the prima facie stage violates equal protection principles. Finally, and alternatively, appellant argues his appointed counsel's failure below to raise the issue of Assembly Bill 333 during proceedings in the trial court was constitutionally ineffective assistance of counsel (IAC).

The Attorney General disputes that Assembly Bill 333 applies retroactively to final judgments at the prima facie stage of section 1172.6, and, even if it were to apply, the Attorney General maintains gang evidence relevant to prove motive and an intent to kill remained admissible. Moreover, the Attorney General argues, no theory of imputed malice, including one based on gang association, was presented to the jury. The Attorney General also disputes that the denial violated equal protection principles, or, alternatively, that appointed counsel below rendered IAC.

Having considered the parties' arguments, we conclude appellant is ineligible for resentencing relief under section 1172.6 as a matter of law and affirm the trial court's order. Assembly Bill 333 does not apply retroactively to final judgments of conviction at the prima facie stage of section 1172.6. Here, the jury instructions make clear no theory

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

of murder invalidated by changes in the law under Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) was presented to the jury, and the jury necessarily found appellant guilty of first degree murder acting with express malice. Moreover, even if Assembly Bill 333 were applicable in this context, it—rather than changes in the law under Senate Bill 1437—would be the basis appellant could not be convicted presently, which does not satisfy section 1172.6, subdivision (a)(3). Additionally, and for similar reasons, appellant has not carried his burden of establishing denial of his petition violated equal protection principles. Having reached the merits of appellant's arguments, we do not reach appellant's alternative IAC claim based on Assembly Bill 333.

## FACTUAL BACKGROUND

In 2013, appellant and his confederate, Tomas Blanco, were charged with murder (§ 187, subd. (a); count 1) and with shooting at a person from a motor vehicle (§ 26100, subd. (c); count 2). Attached to both counts were special enhancement allegations that appellant committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and that appellant was a principal in the offense in which his accomplice personally and intentionally discharged a firearm resulting in the death of the victim (§ 12022.53, subds. (d), (e)(1)).

Appellant's first trial ended in a mistrial when the jury deadlocked and was unable to reach a verdict. Appellant was retried in 2017. The prosecution pursued two theories of first degree murder: willful, deliberate and premeditated murder; and murder perpetrated by means of discharging a firearm from a motor vehicle. (§ 189, subd. (a).) Evidence at trial showed appellant and Blanco had been seen in what appeared to be appellant's vehicle; evidence showed the car drove near the victim (who was walking outside with his girlfriend), one shot was fired from the vehicle, and the victim was

killed.[2]  The victim's girlfriend testified appellant was the driver of the vehicle, and she saw appellant shoot the gun from the driver's side of the car.  Additional trial testimony indicated the victim was a former Norteño gang member who had dropped out, and appellant and Blanco were active Norteño members.  Testimony also indicated that after the victim left the gang, Norteño members would drive by the victim's apartment yelling taunts.  Appellant testified he had dropped out of the gang after the birth of his daughter; he had argued with the victim a few weeks before the shooting, but he claimed they had no other problems.  Gang evidence was admitted relevant to appellant's motive and intent to kill, and to establish the elements of the gang enhancements alleged as to each count under section 186.22, subdivision (b)(1).[3]

The prosecutor argued the murder was gang-motivated, and that, under the law, it did not matter whether appellant shot the victim or whether he was the driver who aided and abetted the shooter.  The prosecution maintained appellant was guilty either as the shooter-perpetrator, or that he directly aided and abetted the shooter (appellant's passenger) with an intent to kill.  The prosecutor pointed to the manner in which the vehicle was driven up right alongside the victim, and argued that was indicative of an intent to kill by the driver, and appellant and Blanco had a motive to kill the victim as he was a gang dropout.

The jury returned guilty verdicts on both counts, and it found true the gang and firearm enhancement allegations as to each count.  The trial court sentenced appellant to an indeterminate term of 25 years to life on count 1, plus a consecutive 25-year-to-life term on the firearm enhancement allegation; the court stayed the sentence for the gang

---

[2]	A more detailed recitation of the facts is provided in our nonpublished opinion in appellant's direct appeal of the 2017 conviction.  (*People v. Torres* (Feb. 5, 2020, F076253) [nonpub. opn.].)

[3]	We previously granted appellant's request for judicial notice of the record on appeal in appellant's direct appeal of the 2017 judgment.  These facts are taken from our opinion on appellant's direct appeal after conviction, and are recited to provide context.

enhancement allegation.  The court also imposed a seven-year term on count 2, but stayed the sentence under section 654, and stayed the sentence for the firearm and gang enhancements alleged as to that count.

Appellant appealed from the judgment, and we affirmed the conviction, but remanded the matter to the trial court to afford it an opportunity to exercise its new sentencing discretion pursuant to Senate Bill No. 620 (Reg. Session 2017–2018) as to whether to strike or dismiss the firearm enhancements.  On remand, the trial court declined to strike or dismiss the firearm enhancements, and it reimposed the same sentence.  No appeal was taken, and the judgment became final.

In April 2023, appellant filed a petition for resentencing under what is now section 1172.6, which the district attorney opposed.  At the prima facie stage, the trial court concluded the record of conviction established no theory of murder invalidated by Senate Bill 1437 was presented to the jury, and appellant was found guilty of first degree murder either as the direct perpetrator or as a direct aider and abettor to the perpetrator acting with express malice, rendering appellant ineligible for relief under section 1172.6 as a matter of law.

## DISCUSSION

Appellant claims the jury was permitted to consider gang-related evidence that, effective January 1, 2022, is now legally insufficient under Assembly Bill 333 to prove various gang charges and enhancements.  The jury was given a limiting instruction under CALCRIM No. 1403 that permitted it to consider gang-related evidence to determine whether appellant acted with the intent required to prove the gang-related crimes and enhancements.  According to appellant, in light of Assembly Bill 333, this instruction effectively allowed the jury to impute malice to appellant based solely upon his participation in a criminal street gang—proven with evidence that is now insufficient.

5.

## I. Applicable Legal Principles

### A. Section 1172.6

Effective January 1, 2019, the Legislature enacted Senate Bill 1437, which "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) The bill limited the scope of the felony-murder rule "so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.'" (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, quoting § 189, subd. (e)(1)–(3).) Secondly, Senate Bill 1437 "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel, supra*, at p. 449, quoting § 188, subd. (a)(3).) Pursuant to this, "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.'" (*Curiel, supra*, at p. 449.)

Senate Bill 1437 also added former section 1170.95—now section 1172.6—to provide a procedural vehicle for those convicted of a qualifying offense "'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.) Thereafter, the Legislature also enacted Senate Bill No. 775 (2021–2022 Reg. Sess.), which, among other things, extended the scope of Senate Bill 1437's ameliorative provisions to those who were convicted of attempted murder or manslaughter. (Stats. 2021, ch. 551, § 1, subd. (a); accord, *People v. Arellano, supra*, 16 Cal.5th at p. 468, fn. 3.)

The procedural process under Senate Bill 1437 requires an offender seeking resentencing to first file a petition with the sentencing court, and the sentencing court then is to determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) The threshold eligibility criteria require a petitioner to allege that (1) a complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not currently be convicted of murder or attempted murder because of changes to sections 188 or 189 made effective January 1, 2019. (§ 1172.6, subd. (a)(1)–(3).) In determining whether the prima facie showing has been made, the trial court is not to engage in any factfinding or weighing of evidence, but if the record of conviction contains facts refuting the allegations in the petition, the court is justified in making a credibility determination adverse to the petitioner and denying the petition as a matter of law. (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)

If the court determines the petitioner has met his or her prima facie burden, the trial court is required to issue an order to show cause and hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1); see *id.*, subd. (c).) The parties are entitled to waive a resentencing hearing and stipulate the petitioner is entitled to have his relevant conviction vacated and be resentenced. (*Id.*, subd. (d)(2).)

7.

If, upon an evidentiary hearing, the petitioner is entitled to resentencing, "the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Id.*, subd. (d)(3).)

### B. Assembly Bill 333

The Legislature originally enacted section 186.22 in 1988 as part of the California Street Terrorism Enforcement and Prevention Act (§ 186.20 et seq.), also known as the STEP Act. (*People v. Clark* (2024) 15 Cal.5th 743, 751.) Section 186.22, subdivision (a), defines a substantive offense punishing active participation in a criminal street gang, while subdivision (b) prescribes increased punishment (through sentence enhancements or alternative penalties) when a felony offense is committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members. (See *People v. Clark, supra*, at pp. 751–752.)

Effective January 1, 2022, the Legislature amended section 186.22 under the STEP Forward Act of 2021—Assembly Bill 333. (Stats. 2021, ch. 699, §§ 1–2.) The new legislation substantially amended section 186.22 to heighten the standards for proving gang allegations, thereby restricting application of the gang-based punishment and recalibrating the statute. (See *People v. Cooper* (2023) 14 Cal.5th 735, 744–745; *People v. Clark, supra,* 15 Cal.5th at p. 761.) Under the amendment, a "'criminal street gang'" was definitionally narrowed to an "ongoing, *organized* association or group of three or more persons" (§ 186.22, subd. (f), italics added) that (1) has a common name or common identifying sign or symbol; (2) has, as one of its primary activities, the commission of the offenses listed in section 186.22, subdivision (e)(1), and (3) whose members collectively engage in or have engaged in a pattern of criminal gang activity (*id.*, subd. (f)). Before amendment, former subdivision (f) of section 186.22 "'required only that a gang's members "individually *or* collectively engage in" a pattern of criminal

activity in order to constitute a "criminal street gang .…"'" (*People v. Hin* (2025) 17 Cal.5th 401, 460–461, quoting *People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).)

To establish a pattern of criminal gang activity, the prosecution must prove "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of," at least two offenses from a list set forth in section 186.22, subdivision (e)(1). These are referred to as predicate offenses. (See *People v. Clark, supra*, 15 Cal.5th at p. 752.) To qualify as a predicate offense, the prosecution must now meet the following requirements: (1) the charged offense cannot be used as a predicate offense; (2) the last predicate offense must have occurred within three years of the date of the currently charged offense; (3) the predicate offense must be committed on separate occasions or by two or more gang members, as opposed to just persons; (4) the predicate offenses must have *commonly benefited* a criminal street gang; and (5) the common benefit must be *more than reputational*. (§ 186.22, subd. (e)(1)–(2); see *Tran, supra*, 13 Cal.5th at p. 1206; *People v. Hin, supra*, 17 Cal.5th at pp. 460–461.)

Assembly Bill 333 also added section 1109, which requires bifurcation of gang enhancement allegations and gang participation offenses upon a defendant's request. (Stats. 2021, ch. 699, § 5.) This bifurcation provision under section 1109 is *not* retroactive. (*People v. Burgos* (2024) 16 Cal.5th 1, 8.)

## II.     Appellant is Ineligible for Relief Under Section 1172.6

### A.     Additional Background

At trial, the prosecution pursued two theories of first degree murder under section 189, subdivision (a): "willful, deliberate and premeditated killing" and "perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death .…"

The jury was not instructed on either a theory of felony murder or the natural and probable consequences doctrine. The jury was instructed on murder under CALCRIM

9.

No. 520, and on first degree murder pursuant to CALCRIM No. 521, as follows in relevant part:

> "The defendant has been prosecuted for first degree murder under two theories: (1) the murder was willful, deliberate, and premeditated and (2) the murder was committed by shooting the victim from a vehicle. [¶] … [¶] The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before committing the act that caused death. [¶] … [¶]

> "The defendant is guilty of first degree murder if the People have proved that the defendant murdered by shooting a firearm from a motor vehicle. The defendant committed this kind of murder if:

> "1. He shot a firearm from a motor vehicle;

> "2. He intentionally shot at a person who was outside the vehicle;

> "AND

> "3. He intended to kill that person."

The jury was instructed on direct aiding and abetting pursuant to CALCRIM No. 400, as follows:

> "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.

> "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.

> "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."[4]

---

[4] The trial court concluded this last paragraph in the instruction should not have been given, but it determined this language did not instruct the jury on a natural and probable consequences theory of murder liability.

The jury was instructed under CALCRIM No. 401:

"To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"1.     The perpetrator committed the crime;

"2.     The defendant knew that the perpetrator intended to commit the crime;

"3.     Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

"AND

"4.     The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

"Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

Due to the gang enhancement allegations under section 186.22, the jury was also instructed pursuant to CALCRIM Nos. 1401 and 1403. As relevant here, the instruction given under CALCRIM No. 1403 provided as follows:

"You may consider evidence of gang activity only for the limited purpose of deciding whether:

"[1.]   The defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related crimes and enhancements;

"[2.]   The defendant had a motive to commit the crimes charged.

"You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider the facts and information relied on by an expert witness in reaching his or her opinion.

"You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."

11.

In closing argument, the prosecutor relied primarily on a theory of direct aiding and abetting to assert that appellant should be convicted of first degree murder. The prosecutor noted a witness saw appellant shoot the gun from the car, but the prosecutor maintained it did not matter if appellant was the shooter, or only the driver, because he still intended the death of the victim and would be culpable for first degree murder even if he wasn't the driver because he aided and abetted the shooter with the intent to kill.

**B.** **Analysis**

As noted, it is undisputed the jury was not instructed on felony murder or the natural and probable consequences doctrine. The prosecution pursued two theories of first degree murder, and argued appellant could be found guilty of first degree murder as either the perpetrator (the shooter) or, if he was not the shooter, as a direct aider and abettor of the shooter as the driver. These theories of guilt were valid both before and after Senate Bill 1437, and they involve no imputation of malice. (*People v. Gentile* (2020) 10 Cal.5th 830, 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought."].) When no theory of murder invalidated by Senate Bill 1437 is presented to the jury, and the jury finds the defendant guilty of first degree murder, it has necessarily found the defendant had the intent to kill; in these circumstances, the defendant is ineligible for resentencing relief under section 1172.6. (See, e.g., *People v. Estrada* (2022) 77 Cal.App.5th 941, 943–944 (*Estrada*) [a defendant convicted of first degree murder as a direct aider and abettor was ineligible for resentencing relief under § 1172.6 as a matter of law].)

Here, there were gang enhancement allegations under section 186.22, and the prosecutor pursued a theory that appellant's gang affiliation was the motive for the murder. Appellant maintains that because of changes in the law under Assembly Bill 333, the jury was permitted to consider appellant's intent to kill for the substantive murder offense by relying on now-invalidated gang evidence, and it was permitted to infer he

intended to kill the victim merely because appellant was alleged to be affiliated with a criminal street gang. As support for this argument, appellant relies on the California Supreme Court's decision in *Strong*, and analogizes his situation to those defendants who were deemed in *Strong* not to be ineligible for relief under section 1172.6 as a matter of law. To place appellant's argument in context, we turn first to *Strong*.

Prior to Senate Bill 1437, as now, a person convicted of first degree murder can be sentenced to death or life without the possibility of parole if the trier of fact finds the murder's commission involved one of several statutorily defined circumstances, including the felony-murder special circumstance, which applies to certain murders committed in the course of one of a dozen of the most serious felonies such as robbery, rape, arson, carjacking, and first or second degree burglary. (*Strong, supra*, 13 Cal.5th at p. 704.) In addition to those defendants who actually kill, or who abet a murder with the intent to kill, the felony-murder special circumstance applies to convicted murderers who were "major participant[s]" in the underlying felony who acted "with reckless indifference to human life." (§ 190.2, subd. (d).)

In 2015 and 2016, the California Supreme Court issued two opinions clarifying the law with respect to the major participant and reckless indifference standards under section 190.2, subdivision (d). (See *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). "*Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*Strong, supra*, 13 Cal.5th at pp. 706–707.)

In enacting Senate Bill 1437 in 2019, the Legislature amended section 189 to limit liability under the felony-murder doctrine to (1) the actual killer; (2) those defendants who, with the intent to kill, aided or abetted the actual killer in the commission of first degree murder; or (3) those who were neither actual killers nor acted with the intent to kill, but were major participants in the underlying felony who acted with reckless

indifference to human life as described in section 190.2—i.e., the statute defining the felony-murder special circumstance that was clarified by *Banks* and *Clark.* By expressly incorporating the major participant and reckless indifference standards from section 190.2, the Legislature's amendment of section 189 under Senate Bill 1437 codified "the understanding of those requirements elucidated in *Banks* and *Clark.*" (*Strong, supra*, 13 Cal.5th at p. 710.)

In the section 1172.6 context, the Courts of Appeal subsequently split on whether major participant and reckless indifference findings made by a jury *before Banks* and *Clark* necessarily precluded resentencing eligibility under section 1172.6. One line of cases concluded that a jury's pre-*Banks/Clark* major participant and reckless indifference findings could not categorically foreclose relief under section 1172.6—i.e., those defendants *might* not presently be convicted of murder or attempted murder as a major participant who acted with reckless indifference *as clarified* by *Banks* and *Clark.* (*Strong, supra*, 13 Cal.5th at p. 709.) A second line of case authority held pre-*Banks/Clark* major participant/reckless indifference findings posed a categorical bar to relief under section 1172.6 because such a petitioner would be potentially eligible for relief *only* because of the clarification of the law under *Banks* and *Clark*, and *not* "'*because of*'" changes to sections 188 or 189 as required under section 1172.6, subdivision (a)(3). (*Strong, supra*, at p. 711.)

The *Strong* court disapproved the latter reasoning, explaining those with felony-murder special circumstance findings made before *Banks* and *Clark* and the changes under Senate Bill 1437 could have sought relief in habeas corpus proceedings to vacate *only* the special circumstance. Such a defendant could not have sought relief from the underlying murder conviction since nothing in *Banks* or *Clark* affected that portion of the verdict. Only after the Legislature amended section 189 under Senate Bill 1437 would a defendant be able to argue he was ineligible for conviction on the substantive murder charge. As a result, *Strong* held, "it is indeed 'because of changes to' section 189 made

14.

by Senate Bill 1437" that a defendant with a pre-*Banks/Clark* felony-murder special circumstance true finding could not today be convicted of murder, satisfying the initial eligibility criterium under section 1172.6, subdivision (a)(3). (*Strong, supra*, 13 Cal.5th at p. 712, quoting § 1172.6, subd. (a)(3).)

Appellant analogizes the changes in the law under Assembly Bill 333 to those under *Banks* and *Clark*. He argues that, although a direct aiding and abetting theory of first degree murder remains viable under Senate Bill 1437 (like felony-murder for major participants who acted with reckless indifference to human life remains a viable murder theory after Sen. Bill 1437), the jury was permitted to consider legally insufficient evidence of appellant's gang affiliation in determining whether appellant acted with an intent to kill (like a jury making pre-*Banks/Clark* major participant and reckless indifference findings). Specifically, appellant argues, the jury was instructed under CALCRIM No. 1403 that it could consider evidence of gang activity for the limited purpose of deciding whether the defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related crimes and enhancements charged. Appellant maintains "[t]he bar has now been raised with regards to establishing gang affiliation" under Assembly Bill 333, and "this necessarily limited the evidence that a jury could consider pursuant to CALCRIM No. 1403 in deciding whether a defendant acted with the intent to kill."

In the context of section 1172.6 resentencing eligibility, there are distinct and untenable differences between the clarification in the law under *Banks* and *Clark* and those brought about by Assembly Bill 333. *Banks*'s and *Clark*'s elucidation on the major participant and reckless indifference to human life standards was expressly incorporated into Senate Bill 1437's amendment of section 189, which is not true of Assembly Bill 333. The Legislature enacted Assembly Bill 333 years *after* Senate Bill 1437, and Assembly Bill 333 is retroactively applicable only to nonfinal judgments. (See *Tran, supra*, 13 Cal.5th at pp. 1206–1207 [Assem. Bill 333's amends. to § 186.22 apply

15.

retroactively to all *nonfinal* judgments].)  Appellant has cited no authority, and we are aware of none, permitting retroactive application of Assembly Bill 333 to a *final* judgment, as appellant's is here, at the prima facie stage under section 1172.6.  (Cf. *ibid*.; *People v. Padilla* (2022) 13 Cal.5th 152, 161–162 [vacatur of sentence made judgment nonfinal; merely filing a collateral attack does not make the judgment nonfinal].)  But even if retroactive application of Assembly Bill 333 to a final judgment were somehow permissible, the changes under Assembly Bill 333 operate independent of Senate Bill 1437.  Unlike the group of defendants affected by *Banks* and *Clark*, there is no way to conclude appellant "could not presently be convicted of murder or attempted murder *because of* changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a)(3), italics added.)

Moreover, Assembly Bill 333 did not eliminate the use of gang-related evidence to establish motive or intent as to a substantive murder charge.  (*Tran, supra*, 13 Cal.5th at p. 1208 ["gang evidence, even if not admitted to prove a gang enhancement, may still be relevant and admissible to prove other facts related to a crime"].)[5]  The jury instructions given here regarding first degree murder and direct aiding and abetting principles permitted the jury to find appellant guilty of first degree murder only if (1) he was the shooter who acted with express malice; or (2) acting with express malice, appellant directly aided and abetted the actual shooter.  Nothing in these instructions, irrespective of Assembly Bill 333, allowed for the imputation of malice based on appellant's gang association or membership, nor did the limiting instruction given under CALCRIM No. 1403 do so.  The latter instruction limited the jury's consideration of gang evidence

---

[5]     Appellant also argues that "[a]lthough the jury necessarily found that appellant acted with the intent to kill, it was allowed to reach that conclusion by relaying, at least in part, upon a law that was later determined to be prejudiced against African-Americans and Latinos,"  which refers to Assembly Bill 333's amendment to section 186.22.  Again, this contention is dependent on application of Assembly Bill 333, which does not apply retroactively to final judgments at the prima facie stage of section 1172.6.  And even if Assembly Bill 333 did apply, appellant could not satisfy the threshold eligibility criteria under section 1172.6, subdivision (a)(3).

only for the purpose of deciding whether appellant acted with the intent, purpose and knowledge or motive required by the substantive offenses or gang-related enhancements. By referencing the substantive offense requirements, CALCRIM No. 1403 effectively redirected the jury back to the requirement appellant had to act with express (not imputed) malice to be found guilty of first degree murder.

In sum, because Assembly Bill 333 does not apply retroactively to final judgments, its new requirements for proving gang offenses and enhancements are not considered in determining appellant's eligibility at section 1172.6's prima facie stage.[6] Moreover, even if it did apply, nothing in Assembly Bill 333 precludes the use of gang evidence to the extent it is probative and admissible under Evidence Code section 352's balancing test. None of the jury instructions, including under CALCRIM No. 1403 (even in light of Assem. Bill 333) can be understood to permit the jury to impute malice to appellant on the basis of appellant's gang membership. Like the petitioner in *Estrada*, appellant's first degree murder conviction renders him ineligible as a matter of law for resentencing under section 1172.6. (See *Estrada, supra*, 77 Cal.App.5th at p. 949 [as a direct aider and abettor to first degree murder, petitioner ineligible as a matter of law for resentencing under § 1172.6].)

---

[6] To the extent appellant argues that CALCRIM No. 1403 or the inclusion of the bracketed portion of the instruction under CALCRIM No. 400 (that the trial court deemed erroneously included) may have been understood by the jury to permit the imputation of malice, we disagree the instructions, taken as a whole, could have been misunderstood in this manner. Moreover, such a challenge could have been made on direct appeal—first degree murder under a direct aiding and abetting theory does not involve the imputation of malice (see *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [direct aider and abettor of murder must, at a minimum, "know and share the murderous intent of the actual perpetrator"]), and the inability to be presently convicted as a result would not be *because of* the changes in the law under Senate Bill 1437 as required under section 1172.6, subdivision (a)(3) (see *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935 [petitioner alleging that instructional errors permitted the jury to impute malice was ineligible as a matter of law under § 1172.6, subd. (a)(3), because those alleged errors had nothing to do with the 2019 legislative changes to §§ 188 and 189]).

## III.    Equal Protection

Appellant argues the denial of his petition at the prima facie stage violates his right to equal protection under the Fourteenth Amendment to the United States Constitution. As an initial matter, we observe no equal protection claim was raised below, and, thus, the claim has been forfeited for purposes of appeal.  (See *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14 [the defendant's failure to raise equal protection claim in the trial court forfeited the argument on appeal]; *People v. Rogers* (2006) 39 Cal.4th 826, 854 [equal protection and other constitutional claims forfeited on appeal for failure to raise them at trial].)  But even considering the merits, we conclude appellant has failed to establish that his ineligibility for relief under section 1172.6 violates equal protection principles.

No state may "deny to any person within its jurisdiction the equal protection of the laws" under the federal Constitution's equal protection clause.  (U.S. Const., 14th Amend.)  "This provision is 'essentially a direction that all persons similarly situated should be treated alike.'"  (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).)  "'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.'"  (*Ibid.*, quoting *People v. Chatman* (2018) 4 Cal.5th 277, 288.)  Equal protection does not mean, however, "that different things must be treated as though they are the same."  (*In re C.B.* (2018) 6 Cal.5th 118, 134.)

Whether an equal protection violation has occurred typically requires a two-step inquiry.  (*Hardin, supra*, 15 Cal.5th at p. 848.)  The first inquiry is whether the state has adopted a classification affecting similarly situated groups in an unequal manner.  (*Ibid.*) More specifically, the inquiry is whether the groups are similarly situated for purposes of the challenged law, not whether they are similarly situated for all purposes.  (*Ibid.*) Although *Hardin* concluded this first inquiry serves no purpose with respect to cases

involving challenges to classifications appearing on the face of the law, the court did not question the "utility of the 'similarly situated' inquiries in other contexts." (*Id.* at p. 851.)

If the groups are similarly situated in all material respects, the second inquiry is whether the challenged classification is justified under the appropriate standard of review. (*Hardin, supra*, 15 Cal.5th at p. 848.) Where, as here, the challenged classification does not involve a suspect classification based on race or gender, for example, rational basis review is applied, and the classification will be sustained if it is rationally related to a legitimate state interest. (*Ibid.*) Only when there is no rational relationship between a disparity in treatment and some legitimate government purpose will an equal protection violation arise. (*People v. Chatman, supra*, 4 Cal.5th at pp. 288–289.) The party challenging the law has the burden to show the challenged difference in treatment is not adequately justified under the applicable standard of review. (*Hardin, supra*, at p. 851.)

Appellant asserts that, as a defendant convicted of first degree murder before enactment of Assembly Bill 333, and his jury being instructed under CALCRIM No. 1403, he is similarly situated to a defendant convicted of murder with a pre-*Banks/Clark* felony-murder special circumstance finding that the defendant was a major participant who acted with reckless indifference to human life—yet appellant is deemed ineligible for relief as a matter of law under section 1172.6 while the latter group is not. Appellant maintains that "[i]n both cases, the defendant was convicted under a still-valid theory of murder, but under circumstances where a subsequent development in the law has cast doubt upon the integrity of the earlier finding of malice aforethought." Appellant argues that because the two groups are similarly situated for purposes of section 1172.6, both groups should be granted an evidentiary hearing where, as here, the law that justified their respective original convictions has subsequently changed.

On the initial prong of the equal protection analysis, the two groups appellant identifies are not similarly situated for purposes of section 1172.6. The statutory purpose underlying section 1172.6 is "'to ensure that murder culpability is commensurate with a

person's actions ....'" (*Curiel, supra*, 15 Cal.5th at p. 464; see Legis. Counsel's Dig., Sen. Bill No. 1437 (2017–2018 Reg. Sess.) Stats. 2018, ch. 1015, § 1, subd. (f), Summary Dig., p. 2.) The statute does not open resentencing to every defendant convicted of murder, attempted murder, or manslaughter. (*Strong, supra*, 13 Cal.5th at p. 715; accord, *Curiel, supra*, at p. 460). As enacted pursuant to Senate Bill 1437, section 1172.6 applies to those defendants who could not presently be convicted of murder because of changes to section 188 or 189 made effective January 1, 2019. As explained in *Strong*, those convicted with a pre-*Banks/Clark* felony-murder special circumstance findings are not categorically precluded from relief under section 1172.6 (i.e., they can satisfy the eligibility requirements at the prima facie stage) because the clarification to the major participant and reckless indifference standards under *Banks* and *Clark* was expressly incorporated into Senate Bill 1437's amendment to section 189, subdivision (e)(3). As a result, it remains possible this class of defendants could not presently be convicted of murder because of changes to section 189, subdivision (e)(3). (*Strong, supra*, 13 Cal.5th at p. 712.)

Differently, Assembly Bill 333, which appellant asserts affected the malice aspect of his first degree murder conviction, was not part of Senate Bill 1437's changes to sections 188 and 189, and it does not apply retroactively to final judgments. As such, appellant cannot show that he could not presently be convicted of murder *because of* the changes to sections 188 or 189—his theory is that he cannot be convicted because of the changes in the law under Assembly Bill 333. He is not similarly situated for purposes of section 1172.6 to those defendants who (like those with pre-*Banks/Clark* felony murder special circumstance findings) *can* make such a showing and are potentially eligible for relief pursuant section 1172.6—i.e., the class of defendants section 1172.6 was meant to benefit. (See *Briggs v. Brown* (2017) 3 Cal.5th 808, 843–845 [explaining limitations for successive habeas petitions in capital cases under § 1509 did not violate equal protection principles as capital prisoners were not similarly situated to noncapital prisoners with

respect to § 1509 even though they share the same general interest in freedom from illegal or unjust convictions]; cf. *People v. Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 935 [petitioner alleging that instructional errors permitted the jury to impute malice was ineligible as a matter of law under § 1172.6, subd. (a)(3), because those alleged errors had nothing to do with 2019 legislative changes to §§ 188 and 189].) In light of this, appellant fails to make the threshold showing required to establish an equal protection violation.

Moreover, even if Assembly Bill 333 applied retroactively to *final* convictions at section 1172.6's prima facie stage, appellant has not adequately demonstrated how its application could have resulted in a conviction under a theory of imputed malice based on his affiliation with a criminal street gang such that he would be similarly situated to defendants who can make such a threshold eligibility showing for purposes of section 1172.6. Even after the passage of Assembly Bill 333, gang evidence may still be relevant and admissible to prove the substantive crime, subject to an Evidence Code section 352 analysis. (See *Tran, supra*, 13 Cal. 5th at p. 1208.) Appellant argues that, in concert with Assembly Bill 333, the instruction given pursuant to CALCRIM No. 1403 allowed the jury to infer that appellant had the intent to kill the victim merely because appellant was alleged to be affiliated with a criminal street gang. But as explained *ante*, neither CALCRIM No. 1403 nor any other instruction permits the jury to do so (or even suggests it may), irrespective of Assembly Bill 333. Appellant presents no persuasive basis to conclude he is similarly situated to those defendants who are potentially eligible for relief under section 1172.6 because they may have been convicted under a now-invalid theory of imputed malice. (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 687 ["'A defendant claiming that state legislation violates equal protection principles must first demonstrate that the laws treat persons similarly situated in an unequal manner.'"]; see

*People v. Garza* (2005) 35 Cal.4th 866, 881 [the appellant attacking judgment must affirmatively demonstrate prejudicial error].)[7]

**DISPOSITION**

The trial court's order denying appellant's section 1172.6 petition is affirmed.


MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


PEÑA, J.

---

[7] As we have addressed appellant's claims regarding Assembly Bill 333 and find them without persuasive merit, we do not address appellant's alternate and related contention that appointed counsel below was ineffective for failing to raise Assembly Bill 333 during the section 1172.6 proceedings. Based on the discussion *ante*, there is no reasonable probability a determination more favorable to appellant would have resulted had counsel below raised the issues related to Assembly Bill 333. (See *People v. Price* (1991) 1 Cal.4th 324, 387 [counsel's failure to make futile or unmeritorious motion or request is not IAC]; *People v. Mickel* (2016) 2 Cal.5th 181, 198 [to demonstrate prejudice, as required for an IAC claim, the "defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different"].)